[L.A. No. 31132. Dec. 5, 1979.]

In re the Marriage of SYBIL and MAX C. FINK.
MAX C. FINK, Appellant, v.
SYBIL FINK, Appellant.

**COUNSEL**

Max C. Fink, in pro. per., and R. Stephen Duke for Appellant Husband.

Greenberg & Glusker and Michael K. Collins for Appellant Wife.

**OPINION**

**MANUEL, J.**—Sybil Fink appeals from the order granting a new trial for legal error in the division of the parties' real property in Florida. Max C. Fink cross-appeals in order to preserve his objections to the judgment.

In January 1972, Max filed a petition for dissolution of his 31-year marriage to Sybil and moved for a separate and early trial of the dissolution issue. The motion to bifurcate was granted; an interlocutory judgment of dissolution was entered in April 1974, with the court reserving jurisdiction as to all other issues. Sybil appealed, and the bifurcation procedure was approved and the interlocutory judgment affirmed in *In re Marriage of Fink* (1976) 54 Cal.App.3d 357 [126 Cal.Rptr. 626].

While that appeal was pending, the trial was held on the reserved issues which included the division of community property, award of spousal support and attorney's fees.

In its judgment the court divided the community property by using the asset distribution method. Under this method the court first determined the value of each community asset and liability and then, taking into consideration the needs and desires of the parties, assigned them to the parties so that the net value of community property distributed to each was equal. Liabilities were subtracted from the totals distributed, and Sybil was ordered to pay Max $11,390 to offset the difference in the net value of community property distributed.

Under the terms of the judgment, the court valued and distributed the community property as follows:

To Max

| | |
|---|---:|
| Hillcrest Country Club membership | $ 25,000 |
| Apartment furniture | 4,750 |
| Lutz painting | 600 |
| Insurance—cash value | 20,110 |
| Loans receivable | 16,360 |
| Law practice | 108,000 |
| Luster trust property in Florida | 377,100 |
| | $ 551,920 |
| Liabilities | (123,041) |
| | $ 428,879 |

To Sybil:

| | |
|---|---:|
| Residence | $ 290,000 |
| Household furniture | 35,000 |
| 39 Florida lots | 96,300 |
| Chagall painting | 42,000 |
| | $ 463,300 |
| Liabilities | (11,641) |
| | $ 451,659 |

Max moved for a new trial on numerous grounds. The motion was granted on the sole ground that there was an "error in law" at trial regarding the division of the real property in Florida.[1] The court stated

---

[1] The court was careful to note that it was not ordering the new trial because of any error in valuing the Florida property, the family home, or the law practice. In regard to Max's claimed new evidence on the value of the Florida property, the court stated "there has been no sufficient showing that the evidence of value of the Florida properties, different from that upon which the Court based its Judgment, could not, with reasonable diligence, have been produced at the trial, and the Court rejects such ground for granting a new trial."

that in awarding one parcel to each party, it "believed...that such a division of the Florida property would result in an equal and equitable division of the community property." It concluded, however, that Civil Code section 4800.5 required that real property situated in another state shall, if possible, be divided so that it is not necessary to change the nature of the interests in such property. Since the court believed a division of the real property in Florida in the manner provided by Civil Code section 4800.5 would have been possible, even though it was not the most practicable or reasonable division, it ruled that failure to comply with that section required granting the motion for a new trial.[2]

Although not entirely clear, it appears that the trial court concluded that Civil Code section 4800.5 required an in-kind division of the Florida property.[3] We disagree and, for reasons that will appear, conclude that the court's division of the Florida property in the judgment fully complied with the provisions of section 4800.5.

Section 4800.5 directs the trial court, if possible, to divide the community property in a manner which will not necessitate a change in the nature of the interests held in out-of-state real property. If such a division is not possible, the section authorizes the court to require the parties to execute conveyances of the property or to award the equivalent money value of the property to the party who would have been benefited by such conveyances.[4] ■ The comment to section 4800.5

---

[2]The real property in Florida consists of two parcels, one known as the Luster trust property and the other as 39 lots. Record title to the 39 lots was in the name of Max alone. Two of the parcels of the Luster trust property were in the names of Max Fink and Elizabeth Luster; the remaining parcels were in the name of Elizabeth Luster alone. It was undisputed that Max and Sybil held a one-third interest as community property in the Luster trust property. Max has managed this property since it was acquired, and the owners of the remaining two-thirds interest wish him to continue to do so.

[3]Unless otherwise indicated, all section references hereafter are to the Civil Code.

[4]Section 4800.5 provides: "(a) Except as provided for in subdivision (b), if the property subject to division under Section 4800 includes real property situated in another state, the court shall, if possible, divide the community property and quasi-community property in accordance with Section 4800 in such a manner that it is not necessary to change the nature of the interests held in the real property situated in the other state. [¶] (b) If it is not possible to divide the property in the manner provided for in subdivision (a), the court may do any of the following in order to effect a division of the property in accordance with Section 4800: [¶] (1) Require the parties to execute such conveyances or take such other actions with respect to the real property situated in the other state as are necessary. [¶] (2) Award to the party who would have been benefited by such conveyances or other actions the money value of the interest in such property that he would have received if such conveyances had been executed or other actions taken."

makes it clear that the section is concerned with the difficulties of affecting title to real property located in other states.[5] (See Assem. Com. on Judiciary Rep., quoted in 10 Cal. Law Revision Com. Rep. (1971) pp. 1042-1043.) Thus the reference in section 4800.5 to not changing "the nature of the interests held" pertains to the manner in which record title is held.

■ Section 4800.5 has as its aim the convenience of the parties and avoidance of the necessity for orders which are cumbersome to enforce. We do not understand it to remove all discretion from the trial court in the division of out-of-state real property, for such a result would be wholly inconsistent with the broad discretion afforded the trial court to

[5]The comment provides: "Section 4800.5 has been added to specify the procedure to be followed when the property subject to division under Section 4800 includes real property situated in another state. [¶] When real property is acquired in another state with community funds, the property is treated as community property for the purpose of division on dissolution of the marriage or on legal separation. See Rozan v. Rozan, 49 Cal.2d 322, 317 P.2d 11 (1957); Tomaier v. Tomaier, 23 Cal.2d 754, 146 P.2d 905 (1944); Recommendation Relating to Quasi-community Property, 9 Cal.L. Revision Comm'n Reports 113, 119 n. 12 (1969). Quasi-community property likewise may include real property situated in another state. See Section 4803; Recommendation Relating to Quasi-community Property, 9 Cal.L.Revision Comm'n Reports 113 (1969). [¶] Section 4800.5 recognizes that the judgment of the court dividing the property cannot directly affect real property in another state, even though the court has jurisdiction in personam over both spouses, unless the judgment is allowed that effect by the laws of the state in which the property is situated. Fall v. Eastin, 215 U.S. 1 (1909); Rozan v. Rozan, 49 Cal.2d 322, 317 P.2d 11 (1957); Taylor v. Taylor, 192 Cal. 71, 218 P. 756 (1923). On the other hand, where the court has jurisdiction in personam over both parties, it may order one of the parties to execute a deed by acting in personam; if the person so ordered does execute the deed, it effectively conveys the interest transferred, even though executed under threat of contempt proceedings. Fall v. Fall, 75 Neb. 104, 113 N.W. 175 (1907), aff'd Fall v. Eastin, 215 U.S. 1 (1909). [¶] Section 4800.5 requires that the court first attempt to effect the equal division of the community property and quasi-community property required by Section 4800 without making any change in the nature of the interests held in the real property situated in the other state. This will be the result where the value of the other community and quasi-community property is equal to or exceeds the value of the real property situated in the other state that is subject to division. Where the court determines that the real property situated in another state or an interest in such property must be transferred from one party to the other to effect the equal division of community and quasi-community property required by Section 4800, the court may order the parties to execute the necessary conveyances or to take such other actions—such as selling the property and including the proceeds in the property division—as may be necessary to effect an equal division of the community and quasi-community property and may enforce its order by contempt proceedings. If a party refuses to execute the instrument necessary to effect the transfer or sale of the property or to take some other necessary action, the problem may be dealt with by awarding the money value of the property or interest therein to the other party, which award must be given full faith and credit. Fall v. Fall, 75 Neb. 104, 113 N.W. 175 (1907), aff'd, Fall v. Eastin, 215 U.S. 1 (1909)." (Cal. Law Revision Com. com. to Civ. Code, § 4800.5. 12A West's Ann. Civ. Code (1979 pocket supp.) p. 88.)

divide all other community property in the interests of the parties. (See *In re Marriage of Connolly* (1979) 23 Cal.3d 590, 603 [153 Cal.Rptr. 423, 591 P.2d 911].) As in the division of other community property, discretion is necessary for the trial court to discharge its duty under the Family Law Act to make a division of community property which is not only mathematically equal, but practical and equitable as well. (See *In re Marriage of Davis* (1977) 68 Cal.App.3d 294, 307 [137 Cal.Rptr. 265]; *In re Marriage of Knickerbocker* (1974) 43 Cal.App.3d 1039, 1048 [118 Cal.Rptr. 232]; *In re Marriage of Connolly, supra,* 23 Cal.3d at p. 603.) Accordingly, we interpret section 4800.5 as establishing only a preference that community real property situated in other states be divided without changing title thereto. It still leaves the determination of when such a division is possible to the sound discretion of the trial court consistent with its duty to achieve a practical, equitable and equal property division.

■ We perceive no violation of section 4800.5 in the division of the Florida property in this case. The court was well within its discretion in concluding that it was not possible to achieve a practical and equal division of the community property without affecting record title to the Florida property. Recourse to the Florida property was necessary to equalize the division because of the award to Max of his law practice and other assets very personal to him. Nothing in section 4800.5 requires that out-of-state real property be divided in kind, and to do so may needlessly engender future lawsuits to partition. The award of one parcel to each party was a practical and sound exercise of the court's discretion.

■ That award also fully complied with section 4800, the principal provision governing the division of community property. Section 4800 directs the court to "divide the community property...of the parties ...equally," but authorizes the court "where economic circumstances warrant,...[to] award any asset to one party on such conditions as [the court] deems proper to effect a·substantially equal division of the property."

■ In *In re Marriage of Connolly, supra,* 23 Cal.3d 590, we rejected the wife's assertion that section 4800 mandated an in-kind division of community property. We distinguished *In re Marriage of Brigden* (1978) 80 Cal.App.3d 380 [145 Cal.Rptr. 716], relied upon by the wife in *Connolly* and by Max in the present case, on its unique facts. We stated that "section 4800 was intended to, and does, vest in the court

considerable discretion in the division of community property in order to assure that an equitable settlement is reached." (23 Cal.3d at p. 603.) The clear intent of the Legislature is that the *result* of any division, with certain exceptions, must be equal. (See Assem. Com. on Judiciary Rep., 1 Assem. J. (1970 Reg. Sess.) pp. 785-788; Assem. Com. on Judiciary Rep., 4 Assem. J. (1969 Reg. Sess.) pp. 8061-8062.) Accordingly, the asset distribution method of dividing community property is a permissible means of complying with the mandate of section 4800. (*In re Marriage of Connolly, supra,* 23 Cal.3d at pp. 602-603; *In re Marriage of Fonstein* (1976) 17 Cal.3d 738, 750-751 [131 Cal.Rptr. 873, 552 P.2d 1169]; *In re Marriage of Kasper* (1978) 83 Cal.App.3d 388, 390-391 [147 Cal.Rptr. 821].)

 In the present case, the court appears to have exercised sound descretion in dividing the community property by the asset distribution method in an effort to achieve a practical as well as equal division. The court awarded Max his law practice and other assets which were very personal to him, including his country club membership, his apartment furniture, his life insurance policies, certain loans receivable, and a painting for which he had a special attachment. The award of the Luster trust property to Max was particularly fitting since he managed it and was closely connected with the other owners of the property. The award of the other Florida property to Sybil was also fitting since it can be easily conveyed to her and will be relatively easy for her to sell. Sybil was also awarded the family residence where she has resided for many years and to which she is emotionally attached, its furnishings and a painting for which she has a special fondness.

Since no error of law appears to have been committed in the trial court's division of the community property, we conclude that the trial court erred in granting a new trial and reverse that order. (*Conner v. Southern Pacific Co.* (1952) 38 Cal.2d 633, 637 [241 P.2d 535].)

It therefore becomes necessary to address the numerous contentions made by Max on his cross-appeal. Those contentions may be summarized as follows: (1) the trial court was required to divide all community assets in kind in order to achieve an equal division of the community property; (2) the trial court determinations of the value of the Luster trust property in Florida and of the taxes on it, of the value of the family residence in Beverly Hills, of the nature and amount of family debts, of the community or separate character of two paintings and a Rolls Royce, and of the valuation of Max's law practice are not supported by

substantial evidence; (3) the trial court should have valued Max's law practice as of the date of separation rather than the date of trial; (4) it erred in deferring the date of cash payments due Max from Sybil to equalize the community property division; (5) the court's award of attorney fees and the conditioning of the new trial order on payment thereof was an abuse of discretion; (6) the trial court erred in imposing a lien on the Luster trust property awarded to Max to secure his obligations to Sybil; (7) it similarly erred in subjecting Max's life insurance to such a lien and in restricting his ability to deal with the insurance; (8) the spousal support award was an abuse of discretion; and (9) misconduct of Sybil's counsel and bias of the trial judge denied Max a fair trial.

*Division of community property.* The contention that the court was required to make an in-kind division of the community property is based on the arguments made and rejected in the discussion of the propriety of the order granting a new trial.

■ *Sufficiency of evidence.* The bulk of Max's argument concerning a lack of substantial evidence to support various segments of the trial court's judgment is based upon a highly selective recitation of the record. Max cites only evidence favorable to his position, ignoring all to the contrary. Such briefing is manifestly deficient.

"The rule is well established that a reviewing court must presume that the record contains evidence to support every finding of fact, and an appellant who contends that some particular finding is not supported is required to set forth in his brief a summary of the material evidence upon that issue. Unless this is done, the error assigned is deemed to be waived. [Citation.] It is incumbent upon appellants to state fully, with transcript references, the evidence which is claimed to be insufficient to support the findings." *(McCosker* v. *McCosker* (1954) 122 Cal.App.2d 498, 500 [265 P.2d 21]; *Sutro Heights Land Co.* v. *Merced Irr. Dist.* (1931) 211 Cal. 670, 687 [296 P. 1088]; *Estate of Palmer* (1956) 145 Cal.App.2d 428, 430-432 [302 P.2d 629]; *Grand* v. *Griesinger* (1958) 160 Cal.App.2d 397, 403 [325 P.2d 475]; *Haynes* v. *Gwynn* (1967) 248 Cal.App.2d 149, 150-151 [56 Cal.Rptr. 82]; *Glendale Fed. Sav. & Loan Assn.* v. *Marina View Heights Dev. Co.* (1977) 66 Cal.App.3d 101, 152 [135 Cal.Rptr. 802]; 6 Witkin, Cal. Procedure (2d ed. 1971) Appeal, § 425, pp. 4391-4392.)

Accordingly, we summarily reject Max's arguments based upon a lack of substantial evidence. It is neither practical nor appropriate for us to comb the record on Max's behalf.

■ *Date of valuation of law practice.* Sybil agrees that the normal procedure would have been to value Max's law practice as of the date of separation rather than as of the date of trial. She notes, however, that the trial court found, in effect, that after separation Max had so commingled his postseparation operations with his preseparation ones that it was impossible to determine value as of the date of separation. Max's briefs do not contain an analysis of the record which would support a conclusion that the trial court's finding was lacking in evidentiary support.

■ *Deferment of payments by Sybil.* In order to equalize the division of community property, the trial court's judgment, entered on December 30, 1975, ordered Sybil to pay Max $11,390 by July 1, 1976, or at such earlier date as she should sell the Florida property awarded her. The judgment provided that the deferred payment carry interest at the rate of 7 percent per annum.

Max contends that this provision makes the division of community property unequal because his use of the $11,390 is deferred for six months and because the interest rate was below the prevailing rate. He relies on *In re Marriage of Tammen* (1976) 63 Cal.App.3d 927 [134 Cal.Rptr. 161]; *In re Marriage of Hopkins* (1977) 74 Cal.App.3d 591 [141 Cal.Rptr. 597]; and *In re Marriage of Clark* (1978) 80 Cal. App.3d 417 [145 Cal.Rptr. 602]. His reliance on those cases is misplaced, for they involved notes with lengthy terms (9 and 10 years) and below-market interest rates which resulted in the notes being worth far less than their face value. Max points to no evidence indicating that the present provision suffers from such defects.

■ *Attorney fee award.* The court ordered Max to pay $52,000 of Sybil's attorney's fees and conditioned the order granting a new trial on payment of the $52,000 award. Max's assertion that the court made no finding as to the reasonableness of Sybil's attorney's fees is without merit. Although the court expressly made no finding as to the reasonableness of Sybil's total obligation to her attorneys for fees (approximately $115,000), which was a matter of contract between Sybil and her attorneys, it did find that $52,000 was a reasonable attorney's fee to be paid by Max for the legal services rendered by Sybil's

attorneys. The court did not err in conditioning its order for a new trial on the payment by Max of the $52,000. (See *Brooks* v. *S.F. & N.P. Railway Co.* (1895) 110 Cal. 173 [42 P. 570]; 5 Witkin, Cal. Procedure (2d ed. 1971) Attack on Judgment in Trial Court, § 102, p. 3682.) In any event, our reversal of the order granting a new trial makes this issue moot.

■ *Lien on Florida property.* The trial court ordered that Sybil be granted an unrecordable lien upon the Luster trust property awarded Max in order to secure his obligation to pay the $52,000 attorney's fee award. Max contends that this provision was erroneous because it directly affected title to the property. We need not reach this contention since Max concedes in his brief that he has paid the $52,000. Accordingly, the issue of the propriety of the lien is moot.

*Spousal support.* The trial court found that Max did not have the ability to pay all of the amounts requested by Sybil for her maintenance and then ordered spousal support of $1,500 per month until further order of the court or Sybil's death or remarriage. The court expressly found that the amount awarded was "within the reasonable ability" of Max to pay. Max's contention that the record states otherwise is without merit. No abuse of discretion is shown in the amount set or the court's failure to set a termination date. (See *In re Marriage of Morrison* (1978) 20 Cal.3d 437 [143 Cal.Rptr. 139, 573 P.2d 41].)

*Misconduct of counsel and bias of trial judge.* The record does not support Max's assertions of bias on the part of the trial judge and misconduct on the part of Sybil's attorney.

*Restrictions on life insurance.* Max was awarded the property interest in policies of insurance on his life with a cash surrender value of $20,110. He was, however, ordered to maintain the insurance in force and to retain Sybil as the irrevocable beneficiary of the policies. Max was precluded from exercising rights of ownership over the policies. The judgment provides that Max's obligations with respect to the life insurance policies shall continue as long as he is obligated under the judgment.

Max contends that the trial court erred in imposing these conditions on the life insurance policies. Sybil states that although she does not concede the existence of error in the trial court's treatment of the life insurance policies, she "has no objection to the elimination of the lien

on those policies" and would agree to a modification of the judgment to eliminate the provisions regarding the restrictions on Max's life insurance policies.

The order granting a new trial is reversed. The judgment is modified to delete paragraph 6 concerning Max's obligations regarding his life insurance policies. As so modified, the judgment is affirmed. Sybil shall recover her costs on these appeals from Max.

Bird, C. J., Tobriner, J., Mosk, J., Clark, J., Richardson, J., and Newman, J., concurred.

The petition of appellant husband for a rehearing was denied January 17, 1980.