[No. A134030. First Dist., Div. Four. Jan. 24, 2013.]

In re the Marriage of MARY L. and GEORGE E. CAMPI.
MARY L. CAMPI, Respondent, v.
GEORGE E. CAMPI, Appellant.

## Counsel

Keiser Family Law and Joseph L. Keiser for Appellant.

Robert J. Goetzinger and Gregory F. Jilka for Respondent.

## Opinion

**BASKIN, J.**[*]—Following more than 20 years of marriage and two years of separation, respondent Mary L. Campi (Mary)[1] filed for a dissolution of the parties' marriage in May 2003. For more than the next seven years, the parties litigated some issues and stipulated to others. They finally disposed of all remaining disputes with a one-day trial that ended on December 9, 2010, and this appeal followed.

Appellant George E. Campi II (George) argues that the trial court committed several reversible errors during and after the trial, including enforcing a stipulation between the parties and refusing to grant a new trial based on his posttrial claim of ineffective assistance of counsel. We conclude that because

---

[*]Judge of the Contra Costa Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

[1] As is customary in marital dissolution cases, we refer to the parties by their first names for ease of reading and to avoid confusion, not out of disrespect. (*In re Marriage of James & Christine C.* (2008) 158 Cal.App.4th 1261, 1264, fn. 1 [70 Cal.Rptr.3d 715].)

there is no right to counsel in dissolution proceedings, George's ineffective assistance claims lack merit. We also reject George's remaining arguments and affirm.

I.

FACTUAL AND PROCEDURAL BACKGROUND

The parties were married on July 11, 1981. George (age 63 at time of trial) was employed as a garbage collector during the marriage, typically earning $83,900 per year; he also earned money playing the accordion at various events. Mary (55 at time of trial) was a homemaker throughout the marriage. During the marriage the parties accumulated property, which included the family home in Pacifica, George's pension, an employee stock option plan, two timeshare condominiums, and various bank accounts and retirement accounts.

The parties separated on January 4, 2002, and Mary filed a petition for dissolution of the parties' marriage on May 29, 2003. At the time of separation the parties had two minor children, who had become adults by the time of trial. Mary sought child custody and support, spousal support, and determination of property rights. On August 26, 2003, George filed a response seeking child custody orders, a termination of spousal support rights, and a determination of property rights.

George retired at the beginning of 2009, subsequent to separation. He was considered disabled and started receiving disability payments in December 2009. After separation, Mary completed "eight months of intensive school" to become a pharmacy technician. Mary was then employed for 18 months at a wage of $17 per hour. On June 3, 2005, Mary was involved in a traffic accident while commuting to work. Mary was hospitalized for a week with injuries to her back, neck, and shoulder. Due to the injuries she received, Mary has been unable to return to work or to be employed.

In a stipulated order filed on April 5, 2007, following a settlement conference, the parties agreed that George would have the option to purchase the family residence in Pacifica at a value of $679,000. In a second stipulated order (related to the value of the residence) filed about four months later, the parties agreed that George was awarded the family residence as his sole and separate property. This stipulated order again stated that the "fair market value of the residence is $679,000," and that George would receive credit "against the purchase price" for his assumption of the debt secured by the property, for his separate property downpayment of $60,000, and for any support overpayments to Mary. This order also provided for payment to Mary

of $30,000 from a brokerage account and for adjustment of the amount owed for the equalizing payment depending on whether these funds were separate or community. The order concluded, "George shall pay to Mary, on or before March 31, 2008 her remaining community share in the family residence in the approximate amount of $250,000–$270,000 plus 6% interest thereon from July 13, 2007."

A bifurcated trial was held to determine the date of separation, which was determined to be January 4, 2002. Trial on all remaining issues was held on December 9, 2010. At trial, the stipulated order was not in issue, and the parties agreed that George would be awarded the home at the stipulated value of $679,000. The main disagreement at trial was over the amount of credits George should receive against the stipulated value. George argued he should owe only $120,000, while Mary argued for an equalizing payment of $279,861. The main difference in the parties' calculations was George's contention that he was entitled to a credit for overpayment of support in an amount exceeding $139,000.

On March 2, 2011, the court's tentative decision was filed. The ruling awarded the home to George "at the agreed upon value of $679,000," determined the various credits and offsets, and concluded that George should pay Mary $227,754 for her interest in the home after offsets and credits. Each party filed a timely objection to the tentative decision, and disagreed with the court over determination of some of the credits and offsets. Significantly, for purposes of this appeal, George *accepted* the court's methodology and valuation of the property at $679,000, but argued that the correct equalizing payment was $219,233.

On March 18, 2011, the court issued a 14-page "Orders Following Trial," which constituted the court's statement of decision. The court agreed with George that the equalizing payment should be $219,233 plus interest at 6 percent per annum. The order granted the petition of dissolution, and restored the parties to the status of single individuals as of the date the statement of decision was filed. The court's final paragraph is titled "PREPARATION OF JUDGMENT," and provides: "[George] shall prepare a judgment incorporating the contents of this order."

Instead of preparing a judgment, however, George obtained new counsel and filed a motion for a new trial, mostly on the ground of ineffective assistance of counsel, and he also requested a modification of the stipulated qualified domestic relations order (QDRO) entered in January 2011, as well as a modification of spousal support. George argued, among other things, that his previous attorney had provided inadequate representation at trial, that the home in Pacifica should have been valued as of the date of trial, that the

QDRO based on the time rule was unfair because George's postseparation earnings increased the amount of the benefits,[2] and that insufficient evidence supported the court's ruling. George's requests were denied on September 20, 2011. The court stated that "both counsel were competent during the trial" and that "[George] prevailed on many more issues than [Mary] did. If I had to pick who I thought was the prevailing party . . . , I would have picked [George] as being the one who prevailed on a lot of issues . . . ."

On December 14, 2011, George filed his notice of appeal. The following day, the court entered a judgment that terminated the marriage as of the date of the March 18, 2011 "Orders Following Trial" and incorporated the terms of that statement of decision.

## II.

### DISCUSSION

### 1. *Timeliness of appeal.*

We first address Mary's argument that this appeal should be dismissed because it was untimely filed. As set forth above, the trial court filed its statement of decision on March 18, 2011. Mary contends that this order was a final determination of the parties' property and support rights and was therefore an appealable order. (E.g., *In re Baycol Cases I & II* (2011) 51 Cal.4th 751, 761, fn. 8 [122 Cal.Rptr.3d 153, 248 P.3d 681] ["California follows a 'one shot' rule under which, if an order is appealable, appeal must be taken or the right to appellate review is forfeited."].) Indeed, the order dissolved the parties' marriage and restored them to the status of single individuals as of the date of the order, and it made a final division of the parties' property. Mary contends that because George did not file his notice of appeal until December 14, 2011, the appeal was untimely because it was not filed within the outer limit of 180 days. (Cal. Rules of Court, rule 8.104(a)(3).)[3]

■ However, "[t]he general rule is that a statement or memorandum of decision is not appealable." (*Alan v. American Honda Motor Co., Inc.* (2007) 40 Cal.4th 894, 901 [55 Cal.Rptr.3d 534, 152 P.3d 1109] (*Alan*); see *Laraway v. Pasadena Unified School Dist.* (2002) 98 Cal.App.4th 579, 583 [120 Cal.Rptr.2d 213] [orders which contemplate "further action, such as the preparation of another order or judgment" are not appealable]; *Davis v.*

---

[2] In his opening brief, George does not argue that the trial court committed any error with respect to this QDRO, and it is therefore not addressed here.

[3] All rule references are to the California Rules of Court.

*Taliaferro* (1963) 218 Cal.App.2d 120, 122–123 [32 Cal.Rptr. 208] [same].) Here, the trial court's statement of decision specifically provided that George was to prepare a "judgment" incorporating the contents of the order, which did not happen until December 15, 2011, making his notice of appeal timely, according to George.[4] Mary herself referred to the statement of decision as a *"proposed* judgment" when she filed objections to it on March 29, 2011. (Italics added.) The clerk provided notice of the subsequent December 15 judgment on Judicial Council form FL-190, as the clerk was required to do under former rule 5.134(a)(2) *(Alan, supra,* at p. 900; Code Civ. Proc., § 664.5, subd. (a)), whereas no such required entry of judgment as to the March 18 order appears in the record.[5]

Undermining George's argument, however, is the fact that he treated the trial court's March 18 statement of decision as a judgment for purposes of filing a motion for a new trial, pursuant to Code of Civil Procedure section 657. In his moving papers, he stated that the March 18 order was *"essentially a judgment in this case"* (italics added), and cited *In re Marriage of Hafferkamp* (1998) 61 Cal.App.4th 789 [71 Cal.Rptr.2d 761]. *Hafferkamp* repeated the well-settled rule that " 'there must be a decision before the notice of motion to attack it [by way of a motion for a new trial] may be given by a "party aggrieved." ' [Citation.] And a 'decision' for these purposes means the rendition of judgment which, in a court trial where a statement of decision is waived, means the 'signing and filing of judgment.' [Citations.]" *(Id.* at p. 793, fn. omitted.) By citing *Hafferkamp* in his moving papers, George clearly construed the statement of decision as a signed and final judgment. *(Ibid.)* This was not an unreasonable interpretation. In fact, had George appealed from the statement of decision, we would have had the discretion to treat it as appealable, because it was signed and filed and constituted the court's final decision on the merits. *(Alan, supra,* 40 Cal.4th at p. 901.)

■ "But a statement of decision is not treated as appealable when a formal order or judgment *does* follow, as in this case." *(Alan, supra,* 40 Cal.4th at p. 901, italics added.) Although the trial court apparently treated its

---

[4] We note that, assuming the December 15 filing was the appealable judgment, George actually filed his notice of appeal one day *early,* on December 14, 2011. However, this court has discretion to treat a notice of appeal filed after the lower court has announced its intended ruling, but before it has rendered judgment, as filed immediately after entry of judgment. (Rule 8.104(d)(2); *In re Marriage of Battenburg* (1994) 28 Cal.App.4th 1338, 1341, fn. 1 [33 Cal.Rptr.2d 871].)

[5] It is unclear from the appellate record how the March 18 statement of decision was served on the parties. Although no notice of entry of the order appears in the record, George lists the March 18 filing as one of the orders appealed from on the civil information statement filed with this court. He also represents that March 18 was a date "that notice of entry of judgment or a copy of the judgment was served by the clerk or by a party under" rule 8.104 (time to appeal).

statement of decision as a judgment when it entertained George's motion for a new trial, its error in doing so does not affect our jurisdiction to hear George's appeal under the particular facts and circumstances presented here. ■ Former rule 5.134(a)(2) specifically provided that the clerk must give notice of entry of a judgment of dissolution using form FL-190, which the clerk apparently did not do until December 15, 2011, when the clerk provided notice of the judgment that was filed that same day. (See *ante*, fn. 5.) ■ We accord the right of appeal in doubtful cases, such as this one, " ' "when such can be accomplished without doing violence to applicable rules." ' [Citation.]" (*Alan*, at p. 901.) We therefore proceed to the merits.

2. *Standard of review.*

Under Family Code section 2550,[6] the court must divide the community estate of the parties equally. "This task constitutes a nondelegable judicial function [citation] which must be based upon substantial evidence [citation]." (*In re Marriage of Andresen* (1994) 28 Cal.App.4th 873, 880 [34 Cal.Rptr.2d 147].) Section 2552 concerns the method the court should use to value the property. As long as the court exercises its discretion in a legal manner, its decision will be affirmed on appeal if there is substantial evidence to support it. (*In re Marriage of Smith* (1990) 225 Cal.App.3d 469, 480 [274 Cal.Rptr. 911].) Similarly, we review a judgment for child or spousal support under the abuse of discretion standard (*In re Marriage of Cheriton* (2001) 92 Cal.App.4th 269, 282–283 [111 Cal.Rptr.2d 755]), but the trial court's discretion must be exercised within the limits of the applicable statutes. (*In re Marriage of Fini* (1994) 26 Cal.App.4th 1033, 1044 [31 Cal.Rptr.2d 749].)

The trial court's findings on the characterization and valuation of assets in a dissolution proceeding are factual determinations which are reviewed for substantial evidence. (*In re Marriage of Fink* (1979) 25 Cal.3d 877, 887 [160 Cal.Rptr. 516, 603 P.2d 881].) "In this regard, the court has broad discretion to determine the manner in which community property is divided and the responsibility to fix the value of assets and liabilities in order to accomplish an equal division. [Citations.] The trial court's determination of the value of a particular asset is a factual one and as long as that determination is within the range of the evidence presented, we will uphold it on appeal." (*In re Marriage of Duncan* (2001) 90 Cal.App.4th 617, 631–632 [108 Cal.Rptr.2d 833].)

3. *The court properly valued the residence pursuant to the parties' stipulation.*

George impermissibly raises several issues as to the value placed on the residence, as none of them was raised at trial. (*In re Marriage of Karlin* (1972)

---

[6] All further unspecified code sections refer to the Family Code.

24 Cal.App.3d 25, 33 [101 Cal.Rptr. 240] [rejecting separate property arguments under federal law, because federal law claims not raised at trial], disapproved on another ground in *In re Marriage of Brown* (1976) 15 Cal.3d 838, 851, fn. 14 [126 Cal.Rptr. 633, 544 P.2d 561].) Even if George's arguments were not forfeited, they lack merit.

George first argues that "[n]o evidence was presented at trial, on December 9, 2010, by either party, as to the value of the family residence at the time of trial." However, contradicting this argument, George later argues "the trial court allowed [Mary] to receive a windfall of $100,000 in excess of what she would've been entitled to had the property been valued at the time of trial, as is required under § 2552." There is no evidence in this record of any value for the residence other than the agreed-on $679,000.[7] Moreover, the no evidence argument totally overlooks the written evidence that in 2007 both parties valued the residence at $679,000 and made their agreement an order of court; at trial the parties used that value, and neither party ever suggested a different value or sought to rescind the stipulated order of court.

George next argues that the stipulation as to the value of the residence was conditional, and since the conditions were not met it was error for the trial court to enforce it. This argument fails for four separate reasons. First, the plain language of the stipulation and order of court were not "conditional." The parties' conduct until after the trial (when George obtained new counsel) was consistent with the terms, as neither party ever sought to set it aside or avoid it on the ground that any condition was not fulfilled. Second, at the trial neither party suggested it was conditional, and George should not be permitted to raise this new issue now. Third, even if it were conditional, there was no error using that value, given that no competing valuations were submitted and no objections were ever filed to the trial court's tentative decision to use that valuation. Fourth, to the extent that the stipulation required later adjustments to the price, such adjustments were accounted for during trial, in the arguments made and in the statement of decision which followed trial.

Finally, George argues that because section 2552 required a new valuation at the time of trial, it was error for the trial court to use a 2007 stipulation and order of court at the 2010 trial. Section 2552 provides: "(a) For the purpose of division of the community estate upon dissolution of marriage or legal separation of the parties, except as provided in subdivision (b), the court shall value the assets and liabilities as near as practicable to the time of trial. [¶] (b) Upon 30 days' notice by the moving party to the other party, the court for good cause shown may value all or any portion of the assets and liabilities at a date after separation and before trial to

---

[7] On June 26, 2012, this court denied George's request for judicial notice of "[t]he severe drop in residential property values since 2006."

accomplish an equal division of the community estate of the parties in an equitable manner." The statute by its terms does not prevent the parties from valuing and dividing property before a trial, which is in fact common in contested dissolutions.

None of the cases cited by George addressed the issue of whether a *stipulated order of court* as to the value of property is conclusive for purposes of a later trial. George first relies on *In re Marriage of Sherman* (2005) 133 Cal.App.4th 795 [35 Cal.Rptr.3d 137], but that case addressed only whether an outdated stipulated value from an earlier time of separation should be used at trial, where the value was *in dispute. (Id.* at p. 802.) In *Sherman*, unlike here, one side was claiming a higher value at the time of trial. By contrast, the stipulation here was not from the time of separation; rather, it was dated five years after the date of separation. And, unlike in *Sherman*, at trial both parties here agreed to the value. *(Id.* at p. 798.) Even after the trial, when George had the chance to object to the trial court using that value, he agreed with it. In *In re Marriage of Walters* (1979) 91 Cal.App.3d 535 [154 Cal.Rptr. 180], upon which George also relies, the court considered whether property should be valued at the time of trial, where a previous interlocutory order had set the value. Neither *Walters* nor *In re Marriage of Hayden* (1981) 124 Cal.App.3d 72 [177 Cal.Rptr. 183], also cited by George, addressed *stipulated* orders entered into before trial, as was the situation in this case.

4. *Ineffective assistance of counsel has no place in contested dissolution proceedings.*

George devotes more than 12 pages in his opening brief to a novel argument that has no legal basis: that the trial court committed reversible error when it denied his motion for a new trial based on ineffective assistance of his counsel.[8] For the reasons that follow, we conclude that the argument is frivolous.

Neither side cites any case that holds there is a right to counsel in dissolution proceedings nor has our independent research revealed any. "[T]he general rule is that there is no due process right to counsel in civil cases. [Citation.] Generally speaking, the right to counsel has been recognized to exist only where the litigant may lose his physical liberty if he loses the litigation." (*Walker v. State Bar* (1989) 49 Cal.3d 1107, 1116 [264 Cal.Rptr. 825, 783 P.2d 184].) Thus, in *Chevalier v. Dubin* (1980) 104 Cal.App.3d 975 [164 Cal.Rptr. 118], the Court of Appeal concluded that as the appellant selected his own private counsel to represent him in a civil case

---

[8] As set forth above, the trial court entertained George's motion for a new trial, despite the fact that no judgment had been entered when the motion was filed. (Cf. Code Civ. Proc., § 659.)

involving punitive damages, he was not entitled to a retrial on the ground his counsel was ineffective. (*Id.* at p. 980.)

We recognize that indigent parents have been granted the right, by court rule and statutory provision, to appointed counsel in *dependency* proceedings. (Welf. & Inst. Code, § 317; rule 5.534(g) & (h); *In re Arturo A.* (1992) 8 Cal.App.4th 229, 238 [10 Cal.Rptr.2d 131].) "There is also a due process constitutional right to representation by counsel on a case-by-case basis when the result of the hearing may be termination of parental rights." (*Arturo A.*, at p. 238.) Welfare and Institutions Code section 317.5, subdivision (a), in turn, specifically provides that all represented parties in dependency proceedings are entitled to competent counsel. (See rule 5.660(d).) There is no such statute or court rule governing dissolution proceedings, and there is no such risk of a loss of the custody of a child, because custody is awarded to one or both parents, not the state. We likewise identify no due process right in this particular case, as no liberty interest of the parties was at stake.

Indeed, the general rule is that attorney neglect in civil cases, if any, is imputed to the client. (*Carroll v. Abbott Laboratories, Inc.* (1982) 32 Cal.3d 892, 895 [187 Cal.Rptr. 592, 654 P.2d 775].) George seems to acknowledge the general rule, but argues that there are exceptions where counsel is negligent and the client is not. George's reliance on seven decades-old cases he string-cites for this notion is misplaced. All of those cases dealt with the settled rule that relief is available after default judgments or dismissals are entered as a result of attorney neglect—an issue which is irrelevant here. We conclude that in dissolution proceedings there is no right to counsel, which moots George's arguments about the alleged ineffective assistance his trial counsel provided.

Further, even assuming, for purposes of this appeal, that George had a right to counsel, the record does not support his argument that counsel provided ineffective representation. In fact, the trial court stated that "both counsel were competent during the trial" and that "[George] prevailed on many more issues than [Mary] did. If I had to pick who I thought was the prevailing party . . . , *I would have picked [George] as being the one who prevailed on a lot of issues* . . . ." (Italics added.) George's chief complaint on appeal seems to be that although Mary presented numerous exhibits at trial, his counsel presented no exhibits and failed to object to Mary's. What relevance—or prejudicial impact—this had at trial, is not specified by George beyond generalities. George also fails to show how any of this had any prejudicial effect. The trial court did not err in rejecting George's ineffective assistance of counsel claims.

### 5. *George is precluded from arguing that he failed to provide the requisite preliminary declarations.*

George argues that there was "no record that [George] filed a Declaration Regarding Service of Declaration of disclosure, or that any other proof of service regarding Appellant's preliminary financial disclosures was ever filed." George asserts that since this failure on his part cannot be waived, the judgment must be set aside. Section 2107, subdivision (d) provides: "Except as otherwise provided in this subdivision, if a court enters a judgment when the parties have failed to comply with all disclosure requirements of this chapter, the court shall set aside the judgment. The failure to comply with the disclosure requirements does not constitute harmless error." The relevant statute does not, however, address the question of whether one party can cause reversible error through his or her own misconduct.

Mary counters that George actually represented to the court that he filed his preliminary declaration of disclosure and is now precluded from denying that for the first time on appeal. We conclude that the interpretation of this statute is moot because George did in fact represent to the court, on three different occasions, that he had exchanged his preliminary declaration of disclosure: on July 2, 2007, August 4, 2009, and just before trial in 2010, when George's counsel again told the court that "husband's Preliminary Declaration of Disclosure was provided in September 2006." Significantly, these facts were pointed out in Mary's opposition but were not addressed in George's reply. George's claim of prejudicial error was never raised in the trial court, and even if he were somehow allowed to raise it now, it constitutes invited error from which he is estopped. (*Van Sickle v. Gilbert* (2011) 196 Cal.App.4th 1495, 1528 [127 Cal.Rptr.3d 542].)

### 6. *Spousal support, arrearages, interest, and other adjustments were supported by substantial evidence.*

With respect to spousal support, George argues that the court ignored facts and that there was no substantial evidence to support such an award. George cites Mary's testimony that she cannot work for more than five to 10 minutes at a time as being impeached by the fact that she sat and testified at the all-day trial. George also points to Mary's testimony that she "thought [she] was going to be able to go to work within maybe the next year," a reference to a then possible recovery in 2008, not the year following trial.

Mary responds that George's arguments are "frivolous." She points to her trial testimony about pain, her medical condition from the accident, and her inability to sleep, work, or think.

 George incorrectly relies on the substantial evidence standard rather than the abuse of discretion standard for spousal support. (*In re Marriage of*

*Cheriton, supra,* 92 Cal.App.4th at pp. 282–283.) Even if we use the substantial evidence standard, we conclude that substantial evidence does in fact support the trial court's conclusion that Mary's medical condition "prohibits her from working any full time or significant jobs." Thus, there was no abuse of discretion.

George next argues that no substantial evidence supported the arrearage order or other adjustments made. However, this argument mainly rests on the ineffective assistance of counsel argument that we have already rejected. To the extent that George quibbles with Mary's testimony, two exhibits, and other testimony at trial, we conclude that the order is reasonable and well within the discretion of the trial court.

As to George's lengthy argument that interest at 6 percent per annum should not have been awarded because the debt was not clear at the time of the stipulation, very little need be said. In their stipulation, made an order of court, the parties agreed that after calculating the amount due, the parties would owe that "plus 6% interest from July 13, 2007." The trial court correctly concluded that the parties' agreement should be enforced.

## III.

### DISPOSITION

The judgment is affirmed. Mary shall recover her costs on appeal.

Reardon, Acting P. J., and Rivera, J., concurred.