Filed 7/17/13  Steven Kim & Associates v. Kim CA2/2

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| STEVEN C. KIM & ASSOCIATES,<br><br>    Plaintiff, Cross-defendant and Respondent,<br><br>    v.<br><br>DAVID J. KIM,<br><br>    Defendant, Cross-complainant and Appellant;<br><br>STEVEN C. KIM,<br><br>    Cross-defendant and Respondent. | B236670<br><br>(Los Angeles County<br>Super. Ct. No. BC429687) |

APPEAL from an order of the Superior Court of Los Angeles County.  Richard L. Fruin, Judge.  Affirmed.

Ashton R. Watkins for Defendant, Cross-complainant and Appellant.

Law Offices of Steven C. Kim & Associates, Steven C. Kim and Gabriel Colorado for Plaintiff, Cross-defendants and Respondents.

David Kim (appellant) appeals from a judgment in favor of Steven C. Kim & Associates (Kim & Associates) and Steven C. Kim (Steven Kim) (collectively respondents) in the amount of $170,000 entered after a jury trial on respondents' complaint against appellant for breach of contract and related causes of action. We affirm.

## CONTENTIONS

Appellant argues that the trial court erred when it granted respondents' motion for directed verdict on his cross-claims against respondents for breach of fiduciary duty and professional negligence. Appellant also contends that the evidence did not support the $170,000 jury verdict against him on respondents' claims for unpaid attorney fees.

## FACTUAL BACKGROUND

In February 2007, appellant retained respondents to represent appellant in a lawsuit against his brother, Ted Kim (T. Kim). The lawsuit, *David J. Kim v. Ted Jae Yun Kim, et al.*, Los Angeles County Superior Court case No. BC353383, was filed on June 2, 2006, by appellant's prior attorney, Peter Gordon. In the complaint, appellant alleged that his brother owed him approximately $1.8 million from a series of loans.

Appellant and respondents discussed the engagement in Korean because appellant is more comfortable speaking in Korean. Respondents provided a written retainer agreement in English. Appellant explained to respondents that he felt that Mr. Gordon had not been aggressive enough in prosecuting the lawsuit. Appellant wanted respondents to take aggressive action as soon as possible because he was concerned that the longer he waited, the more likely it was that T. Kim would squander his assets, particularly the real property in his possession. T. Kim owned commercial property located at 1401-1425 S. Western Avenue, Los Angeles, California.

In June 2007 respondents filed a motion for summary adjudication against T. Kim. The summary judgment was granted as to only one defendant, T. Kim, and not as to T. Kim as trustee of the Kim family trust. The matter went to trial as to the second defendant.

2

On November 14, 2007, respondents obtained a judgment against T. Kim, individually and as trustee of the Kim family trust, in the sum of $1,985,487.90, as well as an award of attorney fees in the amount of $192,914.50. In November 2007, respondents recorded an abstract of judgment, which created a lien against all property owned by T. Kim, including the Western Avenue property.

Steven Kim testified that he and appellant sat down and talked about how to proceed in collecting the judgment. One of the strategies was to try to convince T. Kim to refinance the Western Avenue property and get some money out of the property to satisfy the judgment. Steven Kim and appellant also discussed the possibility of forcing a sheriff's sale of the property. However, they recognized that a sheriff's sale could result in the loss of the property without any recovery by appellant. They also discussed levying on T. Kim's accounts. However, this raised two concerns: first, T. Kim might file for bankruptcy protection. Second, executing a levy might cause T. Kim to default on his current mortgage held by Nara Bank. Steven Kim testified that appellant was aware of a risk that T. Kim could lose the Western Avenue property through default or foreclosure. Appellant therefore instructed respondents not to proceed with a sheriff's sale.

To try to pressure T. Kim to turn over the property, respondents initiated a forced sale by obtaining a writ of execution and providing instructions to the sheriff's office to conduct the sale. T. Kim testified that he told respondents not to go forward with the sale, and that he was willing to turn over the property to appellant.

In order to continue conducting his business at the property, T. Kim proposed a transfer of the property with a lease back to T. Kim. T. Kim prepared a deed for this purpose, and made the proposal directly to appellant. Appellant rejected the proposal because he was not interested in owning the Western Avenue property.

Respondents then made a proposal under which appellant would not hold title in his individual capacity. The plan was to transfer the Western Avenue property to a corporation controlled by appellant. Respondents prepared the documents to form the corporation, with appellant's knowledge and approval. T. Kim transferred the Western

3

Avenue property to the corporation.  The formation of the corporation, and the transfer of the property to the corporation, took place in April and May 2009.

The transfer of the property was part of an agreement for a lease of the premises back to T. Kim.  But appellant did not execute the lease.  Respondents attempted to find a buyer for the property, but were not successful.

Faced with the fact that the Western Avenue property had not been sold; a lack of cooperation by appellant in completing the agreed-upon corporate transaction; and exposure and possible liability to T. Kim, respondents turned over the corporate records of 1421 Western Avenue, Inc. to T. Kim.

After entry of judgment in the T. Kim lawsuit, and an investigation of the transfers of property between T. Kim and his former spouse, Jin Sook Kim (J. Kim), appellant and respondents agreed that a new lawsuit naming J. Kim would be appropriate to try to obtain any property from which the judgment could be recovered.  Steven Kim testified that appellant approved of the filing of this new lawsuit, which was filed on August 20, 2008.  However, respondents did not prepare a new retainer agreement for the J. Kim lawsuit, nor did respondents send a letter to appellant indicating that the original retainer agreement applied to the new lawsuit involving J. Kim.

On June 15, 2009, the action against J. Kim was dismissed based in part on a declaration filed by J. Kim indicating that the subject properties had no equity, and in part on a decision not to expend the resources to pursue the lawsuit.  The dismissal was filed with the knowledge and approval of appellant.

**PROCEDURAL HISTORY**

In January 2010, respondent Kim & Associates filed this lawsuit against appellant for unpaid fees in the amount of $269,081.93.  The complaint alleged three causes of action:  (1) breach of contract, based on the retainer agreement signed by appellant; (2) common count for value of services rendered; and (3) account stated.  The complaint alleged generally that respondents performed legal services on behalf of appellant, and that appellant failed to pay for those services.

4

On November 30, 2010, appellant filed a cross-complaint. The cross-complaint alleged four causes of action: (1) breach of fiduciary duty; (2) legal malpractice; (3) declaratory relief, alleging that the retainer agreement was void due to respondents' failure to translate it into Korean; and (4) usury, contending that the retainer agreement contained a usurious interest rate.

Respondents denied the allegations of the cross-complaint, and alleged that appellant failed to take reasonable steps to mitigate any damages he might have suffered.

The case was tried before a jury from August 2, 2011 through August 9, 2011. On August 8, 2011, respondents orally moved for a directed verdict on appellant's causes of action for professional negligence and breach of fiduciary duty. The trial court granted these motions.

On August 9, 2011, the jury returned a verdict in favor of respondents and against appellant in the amount of $170,000. On August 15, 2011, the court served by mail a notice of entry of judgment.

On October 14, 2011, appellant filed his notice of appeal.

## DISCUSSION

### I. The directed verdicts

#### A. *Standard of review*

"'"[T]he power of the court to direct a verdict is absolutely the same as the power of the court to grant a nonsuit." [Citation.]'" (*Baker v. American Horticulture Supply, Inc.* (2010) 186 Cal.App.4th 1059, 1072 (*Baker*).) "A defendant is entitled to a nonsuit if the trial court determines that, as a matter of law, the evidence presented by plaintiff is insufficient to permit a jury to find in his favor. [Citation.]" (*Nally v. Grace Community Church* (1988) 47 Cal.3d 278, 291 (*Nally*).)

A motion for directed verdict is in the nature of a demurrer. It concedes as true the evidence on behalf of the adverse party, with all fair and reasonable inferences to be deduced therefrom. (*Brassinga v. City of Mountain View* (1998) 66 Cal.App.4th 195, 210.)

5

A directed verdict is subject to de novo appellate review. (*Baker, supra*, 186 Cal.App.4th at p. 1072.) "In reviewing a grant of nonsuit, we are 'guided by the same rule requiring evaluation of the evidence in the light most favorable to the plaintiff.' [Citation.] We will not sustain the judgment "'unless interpreting the evidence most favorably to plaintiff's case and most strongly against the defendant and resolving all presumptions, inferences and doubts in favor of the plaintiff a judgment for the defendant is required as a matter of law.'" [Citations.]" (*Nally, supra*, 47 Cal.3d at p. 291.)

Bearing this standard in mind, we turn to the merits of appellant's causes of action for breach of fiduciary duty and professional negligence.

### B. Judgment on the motions for directed verdicts

The court considered respondents' motions for directed verdict on the two causes of action simultaneously, acknowledging that the evidence in support of these two causes of action was basically the same.

Respondents' argument in favor of the directed verdicts was that the evidence failed to show any damages connected with appellant's breach of fiduciary duty and professional negligence causes of action. Respondents argued:

> "The fact of the matter is that the judgment is still viable and enforceable. It could be enforced today, tomorrow, a year from now. And at the same time the defendant is -- I'll refer for purposes of this motion, cross-complainant, rather, as the cross-complainant seeks the amount of the judgment, and could then turn around if he were to prevail, turn around and recover the judgment on the judgment, so he would have a windfall. That cannot possibly be a proper measure of any damages."

In sum, respondents argued, "[E]ven if [respondent] had done everything that they say he did in terms of misconduct or omissions negligence, the damages claimed by [appellant] amounting to the value of the judgment simply cannot be established by any of the evidence."

The court agreed with respondents, explaining, "There is a judgment . . . . It's not been collected but the judgment is still valid. The judgment is not impaired. It could

6

have been collected earlier. Nonetheless, interest is running on that judgment at 10 percent a year, which is far and above market interest rate at this point in time."

The court also took into account appellant's failure to mitigate his damages, noting: "David Kim had an obligation to take all the reasonable steps to collect his judgment. He didn't take any reasonable steps to collect the judgment. He took no steps at all. And there's been no proof that anything that Steven Kim [did] caused a loss to David Kim."

The court noted that it might take a different approach had appellant been prejudiced by the delay in collecting on the judgment. But the court indicated "David Kim theoretically is accruing profit by not collecting the judgment, which is maybe why he hasn't attempted to collect the judgment." The court granted the motion, noting again that appellant did not show any evidence that "anything that Steven Kim did has caused him out-of-pocket loss."

### C. Elements of the two causes of action

To establish a cause of action for breach of fiduciary duty, the complaining party must produce evidence showing: (1) the existence of a fiduciary duty; (2) the breach of that duty; and (3) damage proximately caused by that breach. (*Mosier v. Southern California Physicians Ins. Exchange* (1998) 63 Cal.App.4th 1022, 1044.)

A fiduciary relationship is a "recognized legal relationship such as guardian and ward, trustee and beneficiary, principal and agent, or attorney and client [citation] . . . . [Citations.]" (*Richelle L. v. Roman Catholic Archbishop* (2003) 106 Cal.App.4th 257, 271.) "'The relation between attorney and client is a fiduciary relation of the very highest character.' [Citation.]" (*Neel v. Magana, Olney, Levy, Cathcart & Gelfand* (1971) 6 Cal.3d 176, 189, fn. omitted.) Thus, appellant's evidence reveals the existence of a fiduciary duty.

To establish a cause of action for professional negligence, the complaining party must produce evidence showing: (1) the duty of the professional to use such skill, prudence and diligence as other members of his profession commonly possess and

7

exercise; (2) the breach of that duty; (3) causation; and (4) damages. (*Budd v. Nixen* (1971) 6 Cal.3d 195, 200.)

As discussed above, the trial court found that appellant failed as a matter of law to show evidence of causation and damages as to both causes of action. Thus, the question before us is whether the evidence, evaluated in a light most favorable to appellant, supports appellant's argument that an act by respondents -- whether described as a breach of fiduciary duty or professional negligence -- caused damage to appellant.[1]

### D. The trial court did not err in granting directed verdicts because appellant failed to show the necessary element of damages

Appellant makes two arguments as to how he was damaged by respondents' alleged acts or omissions. These two arguments are identical as to the breach of fiduciary duty and professional negligence causes of action, therefore we consider them simultaneously.

First, appellant claims there was evidence that respondents' acts and omissions caused the loss of T. Kim's only asset: the Western Avenue property. Appellant claims that T. Kim testified at trial that the property fell into foreclosure. However, the trial court considered this testimony, and concluded it was not relevant to the question of damages because the foreclosure sale notice was not served until May 2011. The court explained to appellant:

> "[Y]ou would have to prove that something that Steven Kim did before this lawsuit, before the cross-complaint was filed caused jeopardy to the collateral. This lawsuit, that is the cross-complaint, was filed November 21, 2010. At least that's the date on the copy of the cross-complaint which I have . . . now. At that time the property was not in foreclosure. There is also the same analysis that would proceed under a

---

[1]    Appellant makes several arguments as to various actions of respondents which, appellant insists, constituted a breach of respondents' fiduciary duties to him. Because the trial court's ruling was restricted to its decision that appellant had failed to prove that any of respondents' actions caused damage to appellant, we will restrict our analysis to the issue of damages. (*Lawless v. Calaway* (1944) 24 Cal.2d 81, 92 ["on appeal from an order granting a nonsuit, the court will ordinarily consider only the grounds specified in the motion at the trial"].)

duty to mitigate theory. That is that David Kim has a duty not to sit on his hands from the time that Steven Kim stopped representing him, David Kim had an obligation to take all the reasonable steps to collect his judgment."

In other words, the trial court found that since the foreclosure process did not begin until after respondents stopped representing appellant -- and indeed after this lawsuit was filed -- appellant had failed to show that anything respondents did caused this loss. The trial court's analysis of this evidence is legally sound. Appellant failed to show a causal link between any act of respondents and the later foreclosure of the Western Avenue property.

Second, appellant claims there was evidence that respondents' acts and omissions caused the loss of several hundred thousand dollars. Specifically, appellant argues that there was evidence suggesting that T. Kim was earning as much as $22,000 per month from his businesses during the time of the T. Kim lawsuit. Appellant argues that respondents never attempted to seize any money from T. Kim's accounts or to collect the accounts receivables from T. Kim's businesses.

The trial court also considered this argument. The trial court concluded that, contrary to appellant's argument, T. Kim's income was not seized because of the parties' overriding intent to preserve the Western Avenue property:

> "Now, there is also the argument that the bank account should have been levied upon. I'm not sure how much money was in the bank account. I've heard $17,000. I've heard $22,000. That was the operating account that Ted Kim had for the property. The evidence appears to be that the parties focused on a different method of collection, namely, sale of the property itself. So the evidence that David Kim went along with the view that the best means to collect the judgment would be to obtain the sale or refinance the property and not to jeopardize that by levying on the bank account which contained only a small amount of money compared to the total judgment and also would jeopardize the continuance of David Kim's control over the property."

In other words, the trial court concluded that the evidence showed that a sound business decision was made: the parties agreed not to levy on T. Kim's bank account,

9

because doing so would jeopardize their ultimate goal of collecting the judgment out of a sale or refinance of the Western Avenue property. Appellant has failed to cite any law showing that a strategic decision such as this may be considered a breach of fiduciary duty. Nor has he cited any case law suggesting that T. Kim's income may be considered a proper measure of damages under the circumstances. The alleged "loss" of T. Kim's income was in fact an attempt to preserve a greater asset -- one from which a greater amount of appellant's judgment might be collected.

Appellant cannot simultaneously complain of the foreclosure on the Western Avenue property and complain that respondents did not take action which the parties agreed would have accelerated that foreclosure. We find no error in the trial court's conclusion that appellant failed to show that he was damaged by any action of the respondents.

## II. The jury verdict

The jury returned a special verdict in favor of respondents on their complaint against appellant for failure to pay for legal services rendered. The jury found the written contract between appellant and respondents was rescinded, but that respondents orally agreed to provide legal services to appellant at appellant's request. When asked whether respondents performed all or substantially all of the legal services requested, the jury again responded, "yes." The jury also found that appellant failed to do something that his agreement with respondents required him to do, and that respondents were harmed by that failure on the part of appellant. The jury awarded respondents $170,000 of the $269,081.93 respondents sought in fees and interest.

Appellant claims that substantial evidence does not support the verdict.[2] We review appellant's claim under the substantial evidence standard. Under this standard,

---

[2]     Respondents argue that this appeal does not challenge the portion of the judgment rendered by the jury in the special verdict, because appellant's notice designating record on appeal states only that the appeal concerns the "directed verdict against cross-complaint." However, as respondents fail to cite any legal authority supporting this argument, we decline to consider it. (*People v. Stanley* (1995) 10 Cal.4th 764, 793 ["'[E]very brief should contain a legal argument with citation of authorities on the points

10

we must determine whether the jury had before it substantial evidence from which it could reasonably find in favor of the appellant.  (*Frank v. County of Los Angeles* (2007) 149 Cal.App.4th 805, 816.)

### A.  Waiver

In making a claim that substantial evidence does not support the judgment, an appellant must summarize the material evidence on the challenged cause of action.  (*In re Marriage of Fink* (1979) 25 Cal.3d 877 (*Fink*).)  Appellant may not rely on a "highly selective" recitation of the evidence.  "Such briefing is manifestly deficient."  (*Id*. at p. 887.)

> "'The rule is well established that a reviewing court must presume that the record contains evidence to support every finding of fact, and an appellant who contends that some particular finding is not supported is required to set forth in his brief a summary of the material evidence upon that issue.  Unless this is done, the error is deemed to be waived. . . .' [Citations.]"

(*Fink, supra*, 25 Cal.3d at p. 887.)

Appellant has failed to meet this requirement, providing only a highly selective and incomplete description of the evidence supporting respondents' claim for unpaid fees.  For example, appellant fails to reference the invoices or any testimony of Steven Kim regarding the necessity of the various actions respondents took to obtain or enforce the judgment.

Under the circumstances, we may presume that the record contains sufficient evidence to support the jury's verdict, and find that appellant has waived his claim of error.

### B.  Substantial evidence supports the jury verdict

To recover for the reasonable value of services rendered under a quantum meruit theory, respondents were required to show "that [they were] acting pursuant to either an express or implied request for services from the defendant and that the services rendered

made.  If none is furnished on a particular point, the court may treat it as waived, and pass it without consideration'"].)

11

were intended to and did benefit the defendant. [Citation.]" (*Ochs v. PacifiCare of California* (2004) 115 Cal.App.4th 782, 794.) Appellant argues that at trial, respondents failed to produce evidence of several elements of their cause of action for the value of services rendered. As set forth below, even if appellant had not waived this claim of error, substantial evidence supports the verdict.

Appellant acknowledges that he requested that respondents represent him in the underlying action against T. Kim. He also acknowledges that it is undisputed that respondents performed the services identified in respondents' legal invoices.

Without citation to the record, appellant claims that respondents failed to show that appellant failed to pay for the legal services. Appellant references only his own testimony that he paid $40,000 to $50,000 to respondents, which is the amount respondents estimated the collection lawsuit would cost. Appellant fails to cite any contrary testimony, fails to acknowledge the remaining balance on respondents' invoices, and fails to demonstrate why the jury's award was unreasonable under the circumstances.

Appellant claims that it was respondents' obligation to show that the amount billed was reasonable. Appellant claims that respondents did not present any evidence showing that the hourly rate or the amount of time billed was reasonable. This contention is patently false. First, respondents presented their invoices which demonstrated the hourly rate and detailed explanations of the services performed. These invoices alone constitute sufficient evidence to support the jury's verdict. Appellant presents no argument or authority suggesting that respondents' invoices were not properly considered as evidence or that the cost of respondents' services was unreasonable.

Next, without elaboration, appellant contends that he presented evidence that respondents spent an "inordinate" amount of time, money and expense developing a basis of legal liability against J. Kim, and that respondents failed to properly name all the defendants in their motion for summary judgment. However, appellant again fails to acknowledge the contrary evidence, including Steven Kim's testimony that the lawsuit against J. Kim was initiated with appellant's full knowledge and consent, and Steven Kim's testimony that the summary judgment did not include T. Kim as trustee of the Kim

12

family trust because there was a triable issue of fact as to this defendant -- not because respondents negligently failed to name this defendant in the motion. The contrary evidence presented by respondents is sufficient to support the jury's verdict.

Appellant further contends that he presented evidence that respondents' legal bill was excessive due to respondents' "mistake" of returning ownership and control of the corporation created to facilitate the sale of the Western Avenue property to T. Kim. Again, appellant fails to acknowledge the evidence at trial that this was not a mistake on the part of respondents, but was a necessary act because of appellant's failure to execute an agreed upon lease-back to T. Kim. The jury was well within reason in concluding the time spent on creating the corporation was not excessive or unnecessary, but was a reasonable strategy for attempting to satisfy the judgment.

Finally, appellant argues that he presented evidence that respondents forfeited their fee when respondents abandoned appellant at a critical stage of the proceedings. In support of this argument, appellant cites the testimony of his expert, Kevin Gerry, who testified at trial:

> "I consider it wholly inappropriate and inexplicable to take that Western Avenue property and essentially give it back to Ted Kim. I view that as an abandonment of the case, I view that as an abandonment of your responsibilities, and I view that as an abandonment of your duty to your client."

In spite of Mr. Gerry's opinion, the record contained sufficient evidence for a jury to conclude that respondents did not abandon appellant. Steven Kim's testimony was that he called appellant several times to get appellant's input on how he should handle the corporation. In fact, he called appellant "almost on a daily basis" to get appellant's instruction on how to proceed. He never received a return phone call. Steven Kim was afraid that appellant would be sued by T. Kim, who was not a friendly party. T. Kim had expressed to Steven Kim that he was misled into thinking he was going to get a long-term lease of the property and insisted that the property transfer occurred under false pretense. Respondents did not want appellant to be sued for fraud.

13

Steven Kim explained that he was in touch with appellant's real estate broker, Saik Park. He explained to Mr. Park that appellant was not returning his phone calls, and that he needed to know whether appellant was going to fire him or close the corporate transaction. Mr. Park called Steven Kim and stated that a lunch meeting among the three men would take place. Steven Kim and Mr. Park attended the meeting. They waited and waited for appellant, who never appeared for the meeting. Steven Kim testified that "at that time I realized [appellant] basically terminated me by refusing to give me any instruction, refusing to contact me, refusing to proceed or do anything." Meanwhile T. Kim was calling Steven Kim's office, threatening to sue appellant. Steven Kim testified: "I know these brothers. He will sue." For that reason, Steven Kim ultimately decided that he would have to transfer the corporation to T. Kim so that he would not sue appellant.

This evidence is sufficient to support the jury's implied finding that respondents did not abandon appellant.

Appellant has failed to show that the jury verdict was not supported by the evidence. For each item of evidence raised by appellant, contrary evidence existed in the record. The resolution of these conflicts in evidence was within the province of the jury. No error occurred.

## DISPOSITION

The judgment is affirmed. Respondents are awarded their costs on appeal.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS.


_____, J.
CHAVEZ

We concur:

_____, P. J.         _____, J.*
BOREN                                            FERNS

_____
* Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

14