Filed 5/23/17

CERTIFIED FOR PUBLICATION

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| In re the Marriage of MISTI and TIM JANES. | |
| MISTI JANES, | E065668 |
| Respondent, | (Super.Ct.No. SWD018756) |
| v. | OPINION |
| TIM JANES, | |
| Appellant. | |

APPEAL from the Superior Court of Riverside County.  James T. Warren, Judge.

(Retired judge of the Riverside Super. Ct. assigned by the Chief Justice pursuant to art.

VI, § 6 of the Cal. Const.)  Affirmed with directions.

Hanson, Gorian, Bradford & Hanich and Erik J. Bradford for Appellant.

Walker Trial Lawyers, Barry M. Walker and Amy M. Oakden for Respondent.

In a 2010 marital settlement agreement, which was attached to a judgment of

dissolution, respondent Misti Janes (Wife) was awarded $113,392 from the retirement

account of appellant Tim Janes (Husband).  In 2014, Wife's $113,392 remained in the

retirement account. Wife sought the $113,392 and the gains or losses resulting from that money. The family court granted Wife's request for a Qualified Domestic Relations Order (QDRO) reflecting Wife was entitled to $113,392 and the resulting gains or losses dating back to the date of separation. Husband contends (1) the family court lacked jurisdiction to modify the 2010 judgment of dissolution by awarding the gains and losses to Wife; and (2) the family court erred by dating the gains and losses back to the date of separation, rather than the date of the dissolution judgment. We affirm the judgment with directions.

**FACTUAL AND PROCEDURAL HISTORY**

A. <u>JUDGMENT OF DISSOLUTION</u>

Wife and Husband married in September 1992. They separated on February 13, 2009. The dissolution judgment was filed on April 19, 2010, in Riverside County Superior Court, with a marital termination date of April 13, 2010. The settlement agreement (the agreement) attached to the judgment, reflected "Petitioner, [Wife], is awarded and Respondent agrees to transfer, assign, and set over to Petitioner, the following community property assets . . . .  [¶]  h. $113,392 from [Husband's] 401k retirement account through Sentinell Benefits."

The agreement also provided, "Respondent, [Husband], is awarded and Petitioner agrees to transfer, assign, and set over to Respondent, the following community property assets . . . .  [¶]  l. Balance of the community interest and Respondent's separate property interest in the 401k retirement account through Sentinell Benefits."

2

The agreement further reflects jurisdiction is "reserved to the Orange County Superior Court" for supervising payments pursuant to the agreement and supervising the division of assets pursuant to the agreement.[1]

B.     LETTERS

On February 26, 2014, Wife received a letter from Fidelity Investments (Fidelity) reflecting Fidelity was directed by the administrator of the HEICO Corporation plan, pursuant to a QDRO, to segregate $113,392 "with no earnings calculated through the date of segregation." Fidelity wrote, "The QDRO provides that [Wife] is entitled to $113,392.00 of the above referenced account as of 02/24/2014, with no earnings calculated through the date of segregation." Fidelity informed Wife that it had established an account for her in the amount of $113,392.

On March 21, Wife's attorney sent a letter to HEICO Corporation reflecting there was no QDRO. Wife's attorney further asserted the correct date of segregation would be the date of marital separation in 2009. Wife's attorney demanded the Fidelity transaction be unwound. HEICO Corporation complied.

C.     REQUEST AND OPPOSITION

On December 12, 2014, Wife sought approval of a proposed QDRO directing Fidelity Investments to segregate $113,392 "plus gains and losses (realized and

---

[1] The parties do not raise the issue of jurisdiction being reserved to Orange County Superior Court. Because the judgment of dissolution was entered in Riverside County, and the ruling at issue in this case was made by the Riverside County Superior Court, we will give effect to what we infer was the parties' intent—to reserve jurisdiction to the Riverside County Superior Court.

3

unrealized) income and expenses (accruals)." Wife asserted the relevant start date for the gains and losses was the date of separation, in February 2009.

Husband opposed Wife's request. Husband asserted the dissolution judgment awarded Wife a lump sum amount of $113,392—not gains and losses. Husband explained that he tried to give Wife the lump sum amount, as demonstrated by the letter from Fidelity, but Wife rejected it, as demonstrated by Wife's attorney's letter.

D.    HEARING

The family court held a hearing on May 20, 2015. Husband argued that Wife was awarded a lump sum from his 401(k) account, not a percentage of the account, and therefore, she was not entitled to gains earned on the account. Husband asserted that awarding gains to Wife amounted to a modification of the dissolution judgment, and the family court lacked jurisdiction to modify the judgment.

Wife asserted that if the 401(k) money had been segregated in 2010, then she would have earned the gains on her portion of the money in her separate account. Wife argued that Husband provided no authority to support his position that Wife was not entitled to the gains earned while the money remained comingled.

The family court responded, "The problem is [*sic*] the judgment specifically says $113,392. That's the amount. It doesn't say anything about gains or losses. It's not like she had a percentage interest in the 401K. It just says $113,392. That appears to be what she's entitled to."

The family court continued, "It seems to me the parties bargained for a specific amount, and it's right here, and that amount for that matter the petitioner [in] this case

4

got $113,392 no matter what happened to the 401K, so if the 401K had lost money, she still would have gotten $113,392. So perhaps the parties just bargained for that amount, and it looks like that's what she should get."

Wife asserted she would have received less if the account suffered losses. The family court asked, "How can you say that?" Wife responded, "Because of the fact that it's a retirement account, so when you transfer money from a retirement account from a QDRO, it's plus or minus the gains or losses on that amount of money." The family court explained the judgment provides Wife was awarded $113,392.

Wife explained the problem resulted from the money not being segregated in 2010. Wife asserted that if the money had been segregated in 2010, then she would have earned gains on her separate account. Wife asserted that Husband should not receive the gains from Wife's $113,392. The family court responded, "It might be if [Husband] for any reason was deleterious and dilatory in giving this money to her, she might be entitled to interest on the money, but I don't really have anything to show that's the case."

Wife asserted she had been e-mailing Husband "for years" asking him to segregate the money, but he failed to do so. Husband asserted Wife could have shown the judgment to Fidelity and had the money transferred herself.

The family court said, "I don't think she's entitled to any grains [sic]. I can't modify the judgment. The judgment is a set amount." Wife asserted she was not seeking modification of the judgment because the judgment is silent on gains and losses. Further, Wife questioned why she would need to show a lack of diligence on Husband's

5

part in order to be awarded interest. Wife asserted she should be awarded interest because the money had "been sitting in his account for all this time." The court responded, "It seems to me that it would depend on what the problem was. If the problem was she wouldn't accept it, then no. She's not entitled to the interest on it."

Wife asserted she could provide evidence of Husband standing in the way of dividing the account. The court offered to hold a hearing on whether interest should be awarded. Wife asked to brief the issue of whether gains could be awarded to Wife. The court responded, "You can brief it, but I don't think you're going to find anything that's going to help you on the issue. It's a modification of the judgment. It doesn't say she gets a percentage. It says she gets a set amount. I'll be glad to look at any case law on it that either one of you can provide me." The court scheduled the hearing for July 22.

E.    BRIEFS

Husband filed a trial brief. Husband asserted Wife was awarded a lump sum from his 401(k) account and an award of gains would be a modification of the judgment. Husband filed an updated trial brief in December, raising the same arguments. Husband included points and authorities. Husband explained a trial court cannot modify a final judgment.

Wife filed a trial brief. Wife asserted that equity required the court to award her the gains on the $113,392. Wife asserted she had been fine with the money staying in the Fidelity account because it was doing well in that account. However, if Wife had been aware that Husband believed all the gains belonged to him, she would have sought

6

to segregate the money sooner.  Wife asserted Husband made no attempt to pay the $113,392 until 2014.

F.    RULING

On December 29, Wife and Husband submitted on the QDRO issue.  On January 22, 2016, the family court issued a written ruling.  The court concluded that awarding the gains to Wife would not be a modification of the judgment.  The court explained, "[T]here is no community interest in the growth of the separated 401k.  The 401k was actually litigated and fully divided by the judgment with [Wife] to receive $113,000 [*sic*] as her community property interest and [Husband] to receive the balance.  [¶] Inasmuch as [Husband] is entitled to his separate proper[ty] interest in the 401k, so is [Wife].  The $113,000 became [Wife's] separate property and the capitalization growth and[/]or loss grew or were subtracted from her $113,000.  That capitalization growth or loss rightfully and equitably belongs to [Wife] because it was produced by her separate property asset.  [Husband] cannot justifiably claim that he is entitled to the growth merely because he received the remainder because the judgment does not mention that the growth would go to either party.  The growth on the $113,000 is neither community property nor [Husband's] separate property.  It is [Wife's] separate property and she is entitled to it."  The family court ordered Husband to execute the QDRO.

## DISCUSSION

### A. JURISDICTION

Husband contends the family court modified the 2010 judgment under the guise of enforcing it. Husband contends the family court lacked jurisdiction to modify the judgment.

The material facts are undisputed. Therefore, we apply the de novo standard of review. (*In re Marriage of Blazer* (2009) 176 Cal.App.4th 1438, 1443.) Community property becomes separate property upon execution of a marital separation agreement. (*Engelman v. Gordon* (1978) 82 Cal.App.3d 174, 178; *In re Marriage of Trantafello* (1979) 94 Cal.App.3d 533, 547.) Executing means signing and delivering the contract. (*Solano Concrete Co. v. Lund Construction Co.* (1976) 64 Cal.App.3d 572, 575, fn. 2.) Profits acquired on separate property are separate property. (Fam. Code, § 770, subd. (a)(3).)

In the instant case, the agreement reflects it is "effective as of March 1, 2010." Wife signed the agreement on March 24, 2010. Husband signed the agreement on April 2, 2010. The agreement was attached to the final judgment, which was filed on April 19, 2010. Thus, the record reflects signatures were completed by April 2, and delivery was completed by April 19. Therefore, the $113,392 in the 401(k) became Wife's separate property as of April 19, 2010, when the agreement was executed. The remaining money in the account on that day belonged to Husband as his separate property.

8

Husband has no legal right to the gains on Wife's separate property. (Fam. Code, §770, subd. (a)(3).) If Wife suffered losses on her separate property, she would have to bear those losses. In other words, the money became Wife's separate property on April 19, 2010, and any gains or losses on that money belonged to her. (Fam. Code, § 770, subd. (a)(3).)

The judgment did not include a mention of the gains or losses; however, there was no need to include them. The judgment included all the necessary information— $113,392 of the 401(k) account was Wife's separate property as of April 19, 2010. Whatever gains or losses occurred on that money after that date belonged to Wife—it was not necessary to include that information in the judgment. Accordingly, when the family court stated that Wife's gains on her separate property were her separate property, the family court was not modifying the judgment.

Husband asserts the instant case is "on all fours" with *In re Marriage of Thorne and Raccina* (2012) 203 Cal.App.4th 492 (*Thorne*). In *Thorne*, the wife and the husband entered into a marital settlement agreement, in which the wife accepted 16 percent of the husband's military pension. The wife sought to have the dissolution judgment set aside when she learned courts apply a time rule to divide a pension. (*Id.* at pp. 495-497.) The wife asserted she was "'entitled to her one-half community share of [the husband's] disposable retirement pay.'" (*Id.* at p. 497.)

The trial court modified the judgment to comply with the time rule. (*Thorne*, *supra*, 203 Cal.App.4th at p. 496.) The appellate court explained that "once a marital dissolution judgment has become final, the court loses jurisdiction to modify or alter it."

9

(*Id.* at p. 499.) The appellate court concluded the trial court erred by modifying the judgment because the court lacked jurisdiction to make the modification. (*Id.* at p. 500.)

The instant case is distinguishable from *Thorne*. Wife is seeking the same amount of principle that was awarded to her on April 19—$113,392 of the 401(k) account. In *Thorne*, the wife was seeking to change the amount of principle she received. The *Thorne* situation is a modification because the wife was seeking an entirely different division of the asset. In the instant case, Wife is not changing the division of the asset. Wife's separate property is still $113,392. Wife will also take the gains or losses on that amount of money. The family court did not change anything about the judgment in issuing its ruling.

At oral argument in this court, Husband asserted (1) he and Wife had bargained for certainty, in particular, the certain sum of $113,392, and (2) the $113,392 was an equalization payment. Husband asserted that if the 401(k) account suffered losses after April 19, then he still would have been required to pay Wife $113,392 because the bargain was for a certain sum and it was an equalization payment.

We see nothing in the agreement indicating the $113,392 was an equalization payment, as opposed to part of the regular division of community property. (See *In re Marriage of Bergman* (1985) 168 Cal.App.3d 742, 761-762 [a spouse awarded more than 50 percent of the community property may be required to make an equalization payment])

Nevertheless, assuming Husband is correct, his argument fails to explain why he is entitled to gains earned on the $113,392. If the $113,392 were a certain sum

10

bargained for as an equalization payment, then that money was still Wife's separate property on April 19. There is nothing indicating an equalization payment was to be delayed; therefore, we assume the payment was to be made immediately. The fact that Wife's separate property equalization payment remained in the 401(k) account does not entitle Husband to the gains earned on Wife's separate property. (Fam. Code, § 770, subd. (a)(3).) Accordingly, we find Husband's argument to be unpersuasive as it pertains to gains.

To the extent the account suffered losses, Husband's argument is problematic. If Wife bargained for a fixed sum of $113,392 as an equalization payment, it would be an odd choice to tie that fixed equalization amount to a 401(k) account, in which the possibility of loss is inherent. The agreement provides, Husband will pay Wife "$113,392 from [Husband's] 401k retirement account through Sentinell Benefits." The agreement also reflects Wife was awarded an IRA, two investment accounts, and "[a]ll bank accounts presently in [Wife's] name." Husband was awarded an IRA account and "[a]ll bank accounts presently in [Husband's] name."

Gains and losses are inherent in a 401(k) account. If the parties expected Wife to receive a fixed sum of $113,392, it stands to reason Wife would not have tied the funding of that fixed sum to a particular 401(k) account that could naturally depreciate in value due to market changes. Instead, one would expect the agreement to reflect Wife was awarded an equalization payment of $113,392, not attached to any particular account, such that Wife could collect her equalization funds from any source. We are not persuaded by Husband's interpretation of the agreement. (See Civ. Code, § 1636

11

[we interpret a contract to give effect to the parties' intention as it existed at the time of contracting].)

In sum, we are not persuaded by Husband's position that (1) the parties intended the $113,392 to be a fixed sum despite any gains or losses on the account, and (2) Husband is entitled to the gains earned on Wife's separate property.

B.    DATE

Husband contends the family court erred by ordering that Wife is to receive gains from the date of separation, rather than the date of the judgment of dissolution.

Property is to be valued as close as possible to the time of trial.  (Fam. Code, § 2552, subd. (a).)  If Wife wanted the family court to apply an alternative date of valuation (e.g., the date of separation), she bore the burden of demonstrating good cause as to why the alternative valuation date is applicable in this case.  (*In re Marriage of Reuling* (1994) 23 Cal.App.4th 1428, 1435.)  Additionally, a party seeking application of an alternative valuation date should file a noticed motion 30 days prior to the hearing, giving the opposing party notice of a possible alternative valuation date.  (Fam. Code, § 2552, subd. (b).)  The 30-day noticed motion is not mandatory, but "timely notice from the requesting party to the other party" is necessary.  (*In re Marriage of Bergman*, *supra*, 168 Cal.App.3d at p. 760, fn. 15.)  The notice should set forth the alternative date sought to be employed, the legal authority supporting the request, and the good cause supporting the use of the alternative date.  (*Ibid.*)

There is nothing in the register of actions indicating Wife filed a noticed motion. We do not see notice of an alternative valuation date included with her request for a

QDRO.  In Wife's trial brief, we see no discussion concerning why there is good cause for the family court to apply an alternative valuation date.

It appears from the record that, on Wife's proposed QDRO, she used the date of separation as the date of valuation, and the family court approved the proposed QDRO as written without any substantive discussion of the date of valuation.  Because Wife did not properly notify Husband of her request for the alternative valuation date, we conclude the family court erred by valuing the 401(k) account as of the date of separation.  The account should have been valued close in time to the trial—April 19, 2010.

At oral argument in this court, Wife asserted Husband forfeited his contention concerning the alternative valuation date because, in the family court, Husband did not object to the alternative valuation date that Wife included in the proposed QDRO.  Wife's proposed QDRO was attached to her trial brief.  The trial brief did not discuss application of an alternative valuation date—no legal authority and no discussion of good cause.  The only indication of an alternative valuation date was the date on the proposed QDRO.

Because Wife did not provide the required notice, e.g., legal authority and a discussion of good cause, we cannot conclude Husband forfeited the issue.  In other words, Husband could not have forfeited an issue that Wife failed to properly raise.

## DISPOSITION

The family court is directed to modify the QDRO to reflect that the relevant start date for the gains and losses is April 19, 2010.  In all other respects, the judgment is affirmed.  The parties are to bear their own costs on appeal.

CERTIFIED FOR PUBLICATION.

MILLER _____
                                                                        J.


We concur:


McKINSTER _____
                    Acting P. J.


SLOUGH _____
                    J.

14