Filed 11/9/22  Marriage of Moreno CA3

NOT TO BE PUBLISHED

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Placer)

----

| | |
|---|---|
| In re the Marriage of CHRISTINA DURAN MORENO and MIGUEL ANGEL MORENO. | C095252 |
| CHRISTINA DURAN MORENO, Appellant, v. MIGUEL ANGEL MORENO, Respondent. | (Super. Ct. No. SDR0051619) |

In a January 2020 marital property settlement agreement, which was attached to a subsequent judgment of dissolution, appellant Christina Duran Moreno (Christina)[1] and respondent Miguel Angel Moreno (Miguel) agreed regarding the division of most of their

---

[1] As is customary in marital dissolution cases, we refer to the parties by their first names for ease of reading and to avoid confusion.  (*In re Marriage of Campi* (2013) 212 Cal.App.4th 1565, 1567, fn. 1.)

1

property and assets, with the understanding that a subsequent expert report would characterize and value the investment and retirement accounts as of a certain date. Following trial on several reserved issues, the trial court confirmed to the parties their respective retirement accounts and ordered Miguel to pay an equalizing payment to Christina from his 401(k) account via a Qualified Domestic Relations Order (QDRO).[2] The court also ordered the parties to equally pay the expert's costs.

On appeal, Christina contends the trial court erred in failing to include gains and losses on the QDRO equalizing payment. She further contends the court erred in equally allocating all of the expert's fees in assessing the parties' investment accounts, rather than allocating only those expert fees incurred after Miguel belatedly disclosed various 401(k) information, which required additional expert analysis.

We conclude that Christina is entitled to the gains and losses on the equalizing payment. We further conclude that the trial court did not allocate *all* of the expert's fees to the parties equally, but rather addressed only those additional fees incurred to prepare his revised report. Accordingly, we shall modify the judgment to clarify that Miguel shall pay Christina the equalizing payment as of December 31, 2019, plus any gains and minus any losses, until the payment is divided pursuant to the QDRO, and that the parties shall share equally the cost of the expert's additional fees for revising his report. As so modified, we shall affirm the judgment.

---

[2] "Under provisions of the federal Employee Retirement Income Security Act of 1974 (29 U.S.C. § 1001 et seq.; hereafter ERISA), private retirement plans may, pursuant to a state court's domestic relations order, pay a portion of an employee participant's retirement benefits directly to the employee's former spouse or dependents, if and only if the state court order meets certain specifications. Such an order is a 'qualified domestic relations order' . . . . (29 U.S.C. § 1056(d)(3).)" (*In re Marriage of Oddino* (1997) 16 Cal.4th 67, 71.)

Christina and Miguel married in September 2004, had two children together, and separated in September 2016. Christina filed for divorce in January 2017, and the status of the marriage was dissolved at Miguel's request in November 2017.

The parties resolved most of the marital property issues through private mediation. In January 2020, the parties executed a Property and Spousal Support Settlement Agreement, dividing the majority of their assets and permanently waiving spousal support. The marital settlement agreement was "subject to [the] final determination of values of the bank accounts at November 1, 2016 and the characterization of the investment and retirement accounts as of December 31, 2019, as further determined by [expert] Seth Kaplan." The settlement agreement also required Miguel to pay Christina an equalizing payment of $20,000 from his share of the bank accounts awarded to him under the agreement. Each party was to bear his or her own attorney's fees and costs.

On March 13, 2020, the court entered a judgment of dissolution, which included the parties' marital settlement agreement. The dissolution judgment reserved jurisdiction over all other issues.

Trial on the reserved issues commenced on August 25, 2020. Although Kaplan had prepared an expert tracing report on the parties' various investment and retirement accounts shortly before trial, Miguel apparently had failed to provide Kaplan with documentation regarding Christina's 401(k) account, which Miguel had received months earlier at the house they formerly shared. The court therefore reserved its decision on the retirement account issue to await Kaplan's revised report incorporating the newly disclosed information.

Because Miguel belatedly disclosed the 401(k) information, Christina's counsel requested that the court order him to pay for any additional fees Kaplan incurred in revising his tracing report. The court ordered Miguel to bear the cost of any updated

Kaplan report based on the new information, but "reserve[d] jurisdiction to reallocate up to 50 percent of that cost upon a showing that is reasonable under the circumstances."

On December 1, 2020, the trial court issued a Memorandum of Tentative Decision. The court adopted the calculations in Kaplan's revised report, which the parties submitted by stipulation in September 2020. Based on Kaplan's revised calculations, the court awarded Christina $619,145 in her retirement and cash accounts, and awarded Miguel $832,146 in his retirement and cash accounts. In order to equalize the division of the pension, retirement, brokerage, and bank accounts, the court ordered Miguel to pay Christina an equalizing payment of $126,501.[3]

As to expert costs, the tentative decision found that under the prior marital settlement agreement, the parties were responsible for their respective attorneys' fees and costs, "except for the costs incurred with Seth Kaplan." The court found that both Miguel and Christina had substantial, and essentially comparable, assets and income, and exercised its discretion to order that the parties share Kaplan's expert costs equally.

Miguel objected to the court's Memorandum of Tentative Decision on several grounds and requested a Statement of Decision. In order to address an alleged unintended tax windfall to Christina, Miguel requested that the court enter a QDRO to distribute the $126,501 equalization payment to Christina from his 401(k) account. As for Kaplan's charges, Miguel argued that to avoid confusion, the court should state that *all* of Kaplan's charges during the dissolution litigation were to be shared equally, and that the difference between the amounts paid to Kaplan should be equalized by adjusting the $126,501 equalizing payment, either up if Christina paid him more, or down, if Miguel paid him more.

---

[3] The total equalizing payment included the initial $20,000 equalization payment stipulated to in the marital settlement agreement plus $106,501.

4

Christina responded to Miguel's objections, arguing that the only thing the tentative decision determined regarding Kaplan's fees was that the parties should pay equally for the *additional amounts incurred* in revising his report because Miguel had failed to timely provide Kaplan with the most recent 401(k) reports and summaries. She asserted that the totality of Kaplan's fees, and the payment thereof, were not presented to the court for decision during the trial on reserved issues, and ordering her to pay any portion of those fees violated the parties' prior marital settlement agreement where they each agreed to pay their own attorneys' fees and costs.

On April 22, 2021, the trial court issued an order denying the objections to the Memorandum of Tentative Decision and proposals for a Statement of Decision, and adopted its tentative decision as its Statement of Decision. The court filed a signed judgment on reserved issues on August 27, 2021.

An attachment to the judgment on reserved issues states the following:

"5. Equalization Payment:

"a) Respondent, Miguel Moreno, owes to Petition[er], Christina Duran Moreno, from the above the total of $126,501 as of December 31, 2019. Such shall be paid through a division of the retirement plan as follows:

"1) A Qualified Domestic Relations Order shall be prepared to equalize the division of the retirement accounts which provides Petitioner, Christina Duran Moreno, ~~and interest~~, in the amount of $126,501 (which includes the $20,000 equalizing payment from Section 4, above) from the Intel 401(k)/SERP plan as of December 31, 2019."

The attachment also provides that "Each party shall bear his/here [*sic*] own attorneys' fees and costs; except, however, the costs incurred with Seth Kaplan shall be shared equally by the parties." A typewritten notation at the bottom of the attachment stating that the attachment was "approved as conforming to court order" by Christina's attorney was left blank with a handwritten line through it, crossing it out.

5

Notice of entry of judgment was filed and served on October 26, 2021.  Christina timely appealed.

DISCUSSION

I

*Gains and Losses on Equalization Payment from Miguel's 401(k) Account*

Christina contends that she is entitled to the gains and losses on the $126,501 equalization payment as of December 31, 2019, to the date of the payment or distribution under the QDRO.  Miguel disagrees, arguing that Christina cannot seek gains and losses on the equalization payment on appeal because she never raised the issue below, and that awarding an equalization payment without accounting for gains or losses was proper.  We conclude Christina has the better argument.

In a marital dissolution proceeding, the trial court must divide community property equally.  (Fam. Code, § 2550; *In re Marriage of Campi, supra,* 212 Cal.App.4th at p. 1572.)  This nondelegable judicial function generally requires that the court value the assets and liabilities as near as practicable to the time of trial.  (Fam. Code, § 2552; *In re Marriage of Campi*, at p. 1572.)

" ' "[T]he [trial] court has broad discretion to determine the manner in which community property is divided and the responsibility to fix the value of assets and liabilities in order to accomplish an equal division.  [Citations.]" ' " (*In re Marriage of Wozniak* (2020) 59 Cal.App.5th 120, 130.)  The trial court's findings on the characterization and valuation of assets in a dissolution proceeding are factual determinations that we review for substantial evidence.  (*In re Marriage of Campi, supra*, 212 Cal.App.4th at p. 1572.)  " 'However, when the resolution of the issue " 'requires a critical consideration, in a factual context, of legal principles and their underlying values,' " the issue is a mixed question of law and fact in which legal issues predominate, and de novo review applies.' " (*In re Marriage of Wozniak*, at p. 130.)

6

Here, the parties stipulated the expert would characterize and value their retirement accounts as of December 31, 2019.  Based on the expert's analysis, the trial court subsequently awarded Christina and Miguel their respective retirement accounts in the judgment on reserved issues, and ordered Miguel to pay Christina $126,501 from his 401(k) retirement account as of December 31, 2019, via a QDRO to equalize the division of the retirement accounts.  The judgment on reserved issues did not specifically reference the gains and losses on the $126,501 equalization payment from the date of valuation to the date of division under the QDRO, however.

Nevertheless, we agree with Christina that she is entitled to the gains and losses on the equalization payment until it is distributed under the QDRO.  On this point, we find *In re Marriage of Janes* (2017) 11 Cal.App.5th 1043 instructive.

In *In re Marriage of Janes*, the parties executed a marital settlement agreement, which was attached to a judgment of dissolution, that awarded the wife approximately $113,000 from the husband's retirement account, but the judgment did not mention gains or losses on that amount.  (*In re Marriage of Janes, supra*, 11 Cal.App.5th at pp. 1045, 1050.)  The money was not distributed immediately, and later the wife sought the $113,000 plus the gains and losses resulting from that money in a request for a QDRO.  (*Ibid.*)

In rejecting the husband's argument that the court lacked jurisdiction to modify the earlier judgment of dissolution by awarding the gains and losses to the wife (*In re Marriage of Janes, supra*, 11 Cal.App.5th at p. 1049), the court found that the $113,000 became the wife's separate property when the parties delivered the signed marital settlement agreement on the same date the court entered the dissolution judgment, and that the husband had no legal right to the gains on the wife's separate property.  (*Ibid.*, citing Fam. Code, § 770, subd. (a)(3) [rents, issues, and profits acquired on separate property are separate property].)  The court found that the judgment did not need to explicitly reference the gains and losses since it included all the necessary information to

7

make any necessary calculations--$113,000 of the 401(k) account was the wife's separate property as of the date of the marital settlement agreement and dissolution judgment. (*Id.* at pp. 1049-1050.) "Whatever gains or losses occurred on that money after that date belonged to [the] [w]ife--it was not necessary to include that information in the judgment." (*Id.* at p. 1050.)

The court also rejected the husband's argument that the wife was not entitled to gains and losses on the $113,000 because it constituted an equalization payment rather than part of the regular division of community property. (*In re Marriage of Janes, supra*, 11 Cal.App.5th at p. 1051.) In doing so, the court reasoned that "[t]he fact that [the] [w]ife's separate property equalization payment remained in the [husband's] 401(k) does not entitle Husband to the gains earned on [the] [w]ife's separate property." (*Ibid.*)

We agree with the reasoning in *In re Marriage of Janes*.[4] Applying that reasoning here, at Miguel's request, the trial court ordered him in the judgment on reserved issues to pay Christina $126,501 from his 401(k) retirement account as of December 31, 2019, via a QDRO to equalize the division of property. The parties had previously stipulated that the retirement accounts would be characterized as of that date. Thus, Christina is entitled to the amount of the equalization payment as of December 31, 2019, plus any gains and less any losses until the $126,501 payment is actually divided pursuant to the QDRO.

---

[4] While the parties cite cases dealing with whether a trial court must consider future tax consequences that may or may not arise after dividing community (see e.g., *In re Marriage of Fonstein* (1976) 17 Cal.3d 738, 742 [trial court erred in taking into account the tax consequences that might result to the husband in the event he subsequently decided to convert his interest in his law firm into cash, and in reducing the current value of that item accordingly]; *Weinberg v. Weinberg* (1967) 67 Cal.2d 557, 567 [trial court did not abuse its discretion in awarding a money judgment to wife for half the value of the community interest in the husband's wholly owned corporations without considering future tax consequences]), we find those decisions inapposite as neither party contends the court erred in considering the tax consequences of the equalization payment.

8

To the extent Miguel argues that Christina never requested gains or losses during trial and cannot raise this new issue for the first time on appeal, we disagree. Christina repeatedly raised the issue of property characterization, allocation, and division below, which implicitly raised the issue of gains and losses on any property allocated to her as separate property. (*In re Marriage of Janes, supra*, 11 Cal.App.5th at pp. 1049-1051; Fam. Code, § 770, subd. (a)(3) [as a matter of law, gains on separate property are separate property].)

We likewise reject Miguel's contention that the court's handwritten interlineation striking the word "interest" with respect to the equalization payment in the judgment on reserved issues shows that the court intended to award Christina only the lump sum of $126,501 and nothing more. As Christina points out, it appears that Miguel's counsel, and not Christina's, prepared the attachment with the "interest" language and her counsel did not sign off on the suggested language eventually stricken by the court. In any event, the fact that the court did not award Christina *interest* on the equalization payment, says little, if anything, about whether Christina is entitled to the *gains and losses* on the equalization payment the court ordered in the judgment on reserved issues.

And finally, we disagree that awarding Christina the equalization payment plus gains and losses required the trial court to engage in some sort of speculation as Miguel argues. Rather, as Christina points out, the gains and losses easily will be determined at the time the 401(k) account is segregated by the plan administrator pursuant to the QDRO.

While not necessarily required under *In re Marriage of Janes* (see *In re Marriage of Janes, supra*, 11 Cal.App.5th at pp. 1050-1051), for purposes of clarity, we shall modify the judgment to state that Miguel shall pay Christina the sum of $126,501 as of December 31, 2019 from his 401(k) account, plus any gains thereon and less any losses thereon, to the date of the payment or distribution under the QDRO.

9

II

*Costs of Kaplan's Expert Services*

Christina contends the trial court erred in ordering the parties to share the cost of Kaplan's fees equally, interpreting the judgment's language to mean *all* of Kaplan's fees. According to her, the only issue before the court at trial was who should pay for the *additional fees* Kaplan incurred to *revise* his report to incorporate the 401(k) information that Miguel failed to timely disclose; as a result, ordering her to pay half of *all* of Kaplan's fees without notice and an opportunity to be heard deprived her of due process and violated the parties' previous marital settlement agreement wherein they stipulated to pay their own attorneys' fees and costs. Miguel, by contrast, argues the court properly ordered them to split *all* of Kaplan's costs equally. As explained below, we are not persuaded by either party's position.

In this case, the judgment on reserved issues states: "Each party shall bear his/here [*sic*] own attorneys' fees and costs; except, however, the costs incurred with Seth Kaplan shall be shared equally by the parties." This language was based on the court's prior Statement of Decision, which provided in relevant part: "in its discretion, that the costs incurred with Mr. Kaplan shall be shared equally."

On its face, the judgment and its underlying Statement of Decision are arguably ambiguous regarding Kaplan's costs. (*Dore v. Arnold Worldwide, Inc.* (2006) 39 Cal.4th 384, 391 ["An ambiguity arises when language is reasonably susceptible of more than one application to material facts"].) It is not clear whether the court meant *all* of Kaplan's fees throughout the entire litigation, or only a *portion* of Kaplan's fees (such as those fees incurred for the additional work required to revise his report). Given this ambiguity, we look to extrinsic evidence to decipher the court's intended meaning. (*SLPR, L.L.C. v. San Diego Unified Port District* (2020) 49 Cal.App.5th 284, 299 [if an order or judgment is ambiguous, a reviewing court may examine the record for its scope

10

and effect and may look at the circumstances of its making, and if the extrinsic evidence is not in conflict, the order or judgment is reviewed de novo]; *Postal Instant Press, Inc. v. Sealy* (1996) 43 Cal.App.4th 1704, 1708 [in construing terms of contract, an appellate court must independently determine the meaning of the language used].)

Based on the record before us, we disagree with the parties' interpretation of the language--that it encompasses *all* of Kaplan's costs, and instead conclude that the judgment's language, although inartfully phrased, refers to splitting equally the *additional* costs Kaplan incurred when revising his report. We thus resolve any ambiguity in Christina's favor.

Contrary to the trial court's finding in the Statement of Decision, the parties' marital settlement agreement did not reference any stipulation regarding the payment of Kaplan's costs. Rather, the settlement agreement merely provides that each party shall bear his or her own costs and attorneys' fees.

At trial, Christina's counsel objected to paying for the cost for Kaplan to revise his report based on the belatedly disclosed 401(k) information. Counsel argued: "Now if the Court was inclined . . . that you go through and value on the new information as opposed to what we have now, then I would request that that be entirely 100 percent at [Miguel's] charge because he's the one who concealed this information from my client." The court agreed that it was reasonable to have Miguel advance the costs to Kaplan for any additional work, and ordered as follows: "the *cost for the updated report from [Kaplan] based upon the new additional information* shall be borne by [Miguel]. The Court reserves jurisdiction to reallocate up to 50 percent of that cost upon a showing that is reasonable under the circumstances." (Italics added.)

Miguel later requested that the trial court amend or modify its Memorandum of Tentative Decision to include the word "all" in discussing Kaplan's fees. In his Objections to the court's tentative decision, Miguel argued: "Page 8 at item 3 states that Seth Kaplan's charges should be shared equally. To avoid confusion, [Miguel] requests

11

the court to state that ALL of Mr. Kaplan's charges in this litigation are to be shared equally . . . ." The court overruled Miguel's objection, and expressly denied "[t]he request for modifications, additions and/or exclusions . . . ." Thereafter, the court adopted the Memorandum of Tentative Decision, which did not reference ALL of Kaplan's fees, as its Statement of Decision.

Given the above, we do not interpret the court's Statement of Decision and subsequent judgment to have addressed whether the parties would share ALL of Kaplan's fees throughout the entire course of the litigation as that issue was not properly before the court at trial. Instead, as the trial transcript makes clear, the only issue before the court was allocating the cost of any *additional* fees Kaplan incurred to revise his report. Indeed, the court specifically *rejected Miguel's request to include ALL* of Kaplan fees in the Statement of Decision upon which the judgment is based.

We note further that in discussing the payment of Kaplan's fees in the Statement of Decision, the court did so *in relation to* Christina's argument during trial that she should not be responsible for any *additional fees* incurred with Kaplan since it was Miguel who failed to provide the most recent 401(k) reports and summaries in a timely manner. This juxtaposition further supports our interpretation that the court ordered the parties to share equally the additional costs associated with Kaplan's work to revise the report, and not all of Kaplan's costs throughout the entire dissolution proceeding.

Interpreting the judgment in this manner also avoids a potential due process problem. " 'The term "due process of law" asserts a fundamental principle of justice which is not subject to any precise definition but deals essentially with the denial of fundamental fairness, shocking to the universal sense of justice.' " (*In re Marriage of Carlsson* (2008) 163 Cal.App.4th 281, 290.) Due process applies in marital dissolution proceedings (*id.* at p. 284), and requires that parties be given notice and an opportunity to be heard before a court decides an issue. (*Id.* at pp. 284, 290-291.) Because the only issue before the court at trial regarding Kaplan's costs were those costs associated with

12

revising his report based on Miguel's belated disclosure of the 401(k) information, interpreting the judgment to refer to all of Kaplan's costs, as the parties have, raises serious due process concerns.

To clarify any ambiguity, we shall modify the judgment to state that each party shall equally pay for any additional costs Kaplan incurred to revise his report based on the 401(k) information Miguel belatedly disclosed.

## DISPOSITION

The judgment is modified to state that Miguel shall pay Christina the sum of $126,501 as of December 31, 2019, from his 401(k) account, plus any gains thereon and less any losses thereon, to the date of the payment or distribution under the QDRO. The judgment is further modified to provide that Christina and Miguel shall equally pay for any additional costs Kaplan incurred to revise his expert report based on the 401(k) information Miguel belatedly disclosed. As so modified, the judgment is affirmed.

Christina is awarded her costs on appeal. (Cal. Rules of Court, rule 8.278(a)(1), (3).)


                                           _____

                                           HULL, J.

We concur:

_____

ROBIE, Acting P. J.

_____

BOULWARE EURIE, J.