Filed 7/31/24  Marriage of Martinez CA4/1

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## COURT OF APPEAL, FOURTH APPELLATE DISTRICT

## DIVISION ONE

## STATE OF CALIFORNIA

| | |
|---|---|
| In re the Marriage of JOSE L. and DARLENE C. MARTINEZ. | |
| | D082154 |
| JOSE L. MARTINEZ, | |
| Respondent, | (Super. Ct. No. FAMSS1603672) |
| v. | |
| DARLENE C. MARTINEZ, | |
| Appellant. | |

APPEAL from a judgment of the Superior Court of San Bernardino County, Shannon N. Suber, Commissioner.  Affirmed.

Law Offices of Soheila Azizi, Soheila Azizi, and Joshua Edmondson for Appellant.

Law Office of Brian C. Unitt, Brian C. Unitt; Law Office of Taylor B. Warner and Taylor B. Warner for Respondent.

## INTRODUCTION

Jose L. Martinez filed a petition for the dissolution of his marriage to Darlene C. Martinez.[1] Darlene did not respond to the dissolution petition, which resulted in the entry of a default and a default judgment. At Darlene's request, the family court vacated portions of the default judgment relating to property division and instructed Jose to establish the value of the community estate at a default prove-up hearing—an order our court affirmed on appeal. (*In re Marriage of Martinez* (Oct. 21, 2021, D078063) [nonpub. opn.] (*Martinez*).) In 2023, after the default prove-up hearing, the family court divided the community estate based on its value as of the date of the original default judgment.

Darlene challenges the family court's valuation and division of the community estate. She contends the court erred by using 2018 (the date of the original default judgment), rather than 2023 (the date of the default prove-up hearing), as the valuation date for the community estate. Finding no prejudicial error, we affirm.

## II

## BACKGROUND

A. *Proceedings Before the Prove-Up Hearing*

The clerk's transcript consists solely of an unsigned family court minute order, a notice of appeal, and the family court's register of actions. Because the record before us is scant, the following background section is drawn from this court's prior opinion in *Martinez, supra*, D078063.

---

[1] Because the parties share the same surname, we refer to them by their first names for purposes of clarity. No disrespect is intended.

"Darlene and Jose were married on February 12, 1994.  Jose filed a petition for dissolution of marriage on April 29, 2016, wherein he used a judicial council form and marked the boxes requesting termination of spousal support and division of marital property. Darlene was personally served with that petition on May 25, 2016.  Jose also filed and served income and expense and community and quasi-community property declarations in January and February 2017.

"Darlene did not respond to the dissolution petition.  In a letter dated November 21, 2016, Jose's counsel reminded Darlene that she had not filed any response (which was due on June 25, 2016) and told her that he would give her until Wednesday, November 23, 2016, to do so.  Counsel also cautioned Darlene that he would 'proceed with taking [her] default' if she did not respond by then.

"Darlene did not file a response to the dissolution petition by November 23.  However, Jose did not file a request for default until February 14, 2017.  The court clerk entered default that same day.  Almost four months later, Darlene sent Jose's counsel an e-mail asking him to set aside the default.  Jose's counsel declined to do so, and, on July 27, 2017, now represented by counsel, Darlene filed a request to set aside default under Code of Civil Procedure section 473, subdivision (b).  In her declaration in support of her request, Darlene asked the court to find that her failure to respond was 'excusable neglect due to severe emotional distress [she] suffered throughout the marriage including [Jose] trying to kill [her].'

"The court held a hearing on the request to set aside default on September 7, 2017.  The transcript of this hearing is not in the record, but the minute order indicates that Darlene was sworn in as a witness and testified.  The court denied the request.

"Over a year later, on September 20, 2018, Jose filed a declaration for default or uncontested dissolution of marriage. Along with his declaration, Jose filed a community and quasi-community property declaration.  The court entered judgment on October 12, 2018.  Notice of entry of judgment was filed and served on October 24, 2018.

"Almost two months later, on December 14, 2018, Darlene filed a request to set aside the default judgment as well as the entry of default.  The court heard oral arguments on Darlene's request on

3

October 2, 2019, but the court continued the matter to allow further briefing.  The court was concerned that there was 'insufficient evidence at [that] time to determine if the court [could] set aside a portion or portions of the default judgment without disturbing the entry of default.'  Thus, the court asked for supplemental briefing to address that issue.  That said, the court stated that it did not see any justification for setting aside the entry of default.

"Upon resuming the hearing on October 17, the court, before allowing the parties to argue, issued an oral tentative ruling, wherein it explained:

> 'So my tentative would be the following:  To leave the default intact but set aside the judgment itself because the judgment itself is both violative of Family Code Section 4336 and contains an unconscionably [un]equal division of assets based on the record itself.  Were the court to believe the assets are equal, the Court can simply re-enter the judgment.'

"The court's tentative ruling included setting a default prove-up hearing in which Jose would provide evidence as to the assets before the court, 'including the value of assets that were not specifically mentioned in documents prior to the full judgment prepared and entered, such that the Court has a good understanding of the value of all these assets and can make proper, legal orders under the law.  And the authority that I would indicate would be Code of Civil Procedure Section 473(d).'

"After hearing further argument, the court adopted its tentative as the ruling of the court and vacated that portion of the default judgment relating to property division and spousal support, and Jose was directed to prove-up the property values with no participation by Darlene.  The court stated that it was vacating that property division and spousal support sections of the judgment because it did not find them 'understandable,' and it found those portions of the judgment 'in ... violation of the law' and offensive to the court's 'sense of justice' and 'sense of fairness.'  Nevertheless, the court found no reason to allow Darlene to participate in the prove-up, noting:  'When you refuse to participate by your own volition, you run the risk of having

4

things happen that you wish hadn't happened. That's the importance of being served and knowing what's going on in a case.'

"The matter was then set for a default prove-up hearing. Darlene filed her notice of appeal on December 16, 2019. The automatic stay under section 916 prevented the prove-up hearing from taking place. Jose filed a notice of appeal on February 6, 2020."

(*Martinez, supra*, D078063, fns. omitted.) On appeal, our court affirmed the family court order vacating, in part, the default judgment. (*Ibid*.) Remittitur issued on December 30, 2021.

B. *The Prove-Up Hearing*

The family court held a default prove-up hearing on January 20, 2023, and announced its ruling on February 24.

At the outset of the prove-up hearing, Jose asked the court to value the community estate as of 2018—the date on which the default judgment was entered—rather than 2023. He argued he had hired experts, spent "a ton of money," and done "a significant amount of work" to obtain asset valuations he filed in connection with the default judgment, which he would have relied on if Darlene had not appealed the order partially vacating the default judgment. He stated he was "not in a position ... to basically re-prepare his case, revalue the assets that he had already done some several years ago." He added that he had maintained the real properties composing the bulk of the community estate during the dissolution proceedings, whereas Darlene had made "no work or effort" to maintain them. The court indicated it intended to grant Jose's request and value the community estate as of 2018.

Jose testified at the default prove-up hearing. He stated he and Darlene bought a residence in Rancho Cucamonga during the marriage and used $70,000 of his money as the down payment. In 2018, an appraiser valued the property at $550,000 and it had a mortgage balance of $97,251.

5

Since the parties' separation in February 2016, Jose has continued to live in the Rancho Cucamonga residence. He has been responsible for the mortgage payments, utility payments, insurance payments, upkeep, and improvements for the property.

Jose testified that he and Darlene also bought a rental property in Ontario during the marriage. In 2018, the appraiser assigned the property a value of $360,000 and it had a mortgage balance of $65,372. After the parties' separation, Jose continued to manage the Ontario property. The rental income did not generate significant income, but it generally—although not always—covered the cost of the mortgage. Since the parties' separation, Jose has been responsible for the mortgage payments, utility payments, insurance payments, taxes, upkeep, and improvements for the property.

Jose described various other community assets identified in the dissolution petition. Those assets included a vacation timeshare (with an estimated value of $20,000), two vehicles (with an estimated collective value of $17,551), $7,576 in a savings account, $2,945 in a checking account, and a retirement account (with an estimated value of $49,926 as of the date of separation).

On February 24, 2023, the court issued its ruling valuing and dividing the community estate, which it memorialized in an unsigned minute order. The court valued the community estate as of 2018, the date of the default judgment. In total, it valued the community estate at $775,374—the collective value of the marital assets, minus the $70,000 down payment Jose

provided for the Rancho Cucamonga property.[2] Darlene appeals the February 24 minute order.

## III

## DISCUSSION

A. *The Court has Appellate Jurisdiction*

" 'The existence of an appealable judgment [or order] is a jurisdictional prerequisite to an appeal.' " (*In re Marriage of Tim & Wong* (2019) 32 Cal.App.5th 1049, 1052.) Therefore, we address the issue of appealability at the outset of our discussion.

Darlene purports to appeal the unsigned minute order entered on February 24, 2023. An unsigned minute order is not appealable where it directs a party to prepare a final written order or judgment. (*Luo v. Volokh* (2024) 102 Cal.App.5th 1312, 1326; see *Berman v. Klassman* (1971) 17 Cal.App.3d 900, 908 ["the minute order ... directing the preparation of a formal written judgment ... was not an appealable order"].) Because the minute order in this case directs Jose to prepare a judgment, he argues the minute order is not appealable and the appeal should be dismissed. (*People v. Clark* (2021) 67 Cal.App.5th 248, 254 ["Because an appealable judgment or order is essential to appellate jurisdiction, the appellate court must ... dismiss the appeal if the judgment or order is found to be nonappealable."].) We agree with Jose the minute order is not appealable, but we deny his request to dismiss the appeal.

---

2     The court found the Rancho Cucamonga property had a value of $452,749 (the 2018 fair market value of $550,000 minus the $97,251 mortgage balance); the Ontario property had a value of $294,627 (the 2018 fair market value of $362,000 minus the $65,373 mortgage balance); the retirement account had a value of $49,926; the timeshare had a value of $20,000; the savings account had $7,576 in it; the checking account had $2,945 in it, and the vehicles had a cumulative value of $17,551.

After the family court entered the minute order, it issued a final judgment on reserved issues, dated July 28, 2023, which was signed and included the minute order as an attachment. At our request, Darlene obtained a copy of the judgment and submitted it to our court. Because a "judgment was actually entered, there is no doubt concerning which ruling [Darlene] seeks to have reviewed, and [Jose was] not misled to [his] prejudice," we exercise our discretion to construe Darlene's appeal as a premature appeal from the appealable final judgment. (*Boyer v. Jensen* (2005) 129 Cal.App.4th 62, 69; see *Mukthar v. Latin American Security Service* (2006) 139 Cal.App.4th 284, 288 ["when [a nonappealable] order is followed by a judgment, the appellate court may deem the premature notice of appeal to have been filed after the entry of judgment"].)

B. *Darlene Has Not Established Prejudicial Error*

On the merits, Darlene challenges the family court's election to use 2018 (the date of the original default judgment) as the valuation date for the community estate, rather than 2023 (the prove-up hearing date). For reasons we shall explain, Darlene has failed to establish that the court's use of 2018 as the valuation date constituted a prejudicial error warranting reversal.

Unless the parties to a marital dissolution proceeding agree otherwise, the family court must "divide the community estate of the parties equally." (Fam. Code, § 2550.) To accomplish this mandate, the court must first value the community estate. Family Code section 2552, subdivision (a) provides, "For the purpose of division of the community estate upon dissolution of marriage or legal separation of the parties, except as provided in subdivision (b), the court shall value the assets and liabilities as near as practicable to the time of trial." (*Id.*, § 2552, subd. (a).) Subdivision (b), in turn, states, "Upon 30 days' notice by the moving party to the other party, the

court for good cause shown may value all or any portion of the assets and liabilities at a date after separation and before trial to accomplish an equal division of the community estate of the parties in an equitable manner." (*Id.*, subd. (b).)

The purpose of the "good cause" exception in Family Code section 2552, subdivision (b), is to " 'remedy certain inequities such as "when the hard work and actions of one spouse *alone* and after separation ... greatly increases the 'community' estate which must then be divided with the other spouse." [Citation.] In this regard, Family Code section 2552, subdivision (b) gives the trial court considerable discretion to divide community property in order to assure an equitable settlement is reached.' " (*In re Marriage of Geraci* (2006) 144 Cal.App.4th 1278, 1290–1291; see also *In re Marriage of Prentis-Margulis & Margulis* (2011) 198 Cal.App.4th 1252, 1279 [subdivision (b) "allows the trial court to use an alternate valuation date where fairness requires"].)

Darlene makes two arguments contesting the court's selection of 2018 as the valuation date for the community estate. First, she argues Jose, the moving party, failed to provide her with 30 days' notice of his intent to seek a valuation date other than the trial date, as contemplated by Family Code section 2552, subdivision (b).[3] She also claims the court abused its discretion when it selected 2018 as the valuation date because the community estate allegedly increased in value after 2018 due to "inflation or market fluctuation," and Jose should not be the only spouse allowed to enjoy this windfall. In response, Jose asserts Darlene has failed to establish prejudice from either of these claimed errors. We agree with Jose.

---

[3] Under Family Code section 2552, subdivision (b), a "30–day noticed motion is not mandatory, but 'timely notice from the requesting party to the other party' is necessary." (*In re Marriage of Janes* (2017) 11 Cal.App.5th 1043, 1052.)

" 'The burden is on the appellant in every case to show that the claimed error is prejudicial; i.e., that it has resulted in a miscarriage of justice.' [Citation.] Injury is not presumed from error, but injury must appear affirmatively upon the court's examination of the entire record. 'But our duty to examine the entire cause arises when and only when the appellant has fulfilled his duty to tender a proper prejudice argument. Because of the need to consider the particulars of the given case, rather than the type of error, the appellant bears the duty of spelling out in his brief exactly how the error caused a "miscarriage of justice." ' " (*In re Marriage of McLaughlin* (2000) 82 Cal.App.4th 327, 337.)

Darlene makes no argument that her alleged failure to receive 30 days' notice prejudiced her. Ostensibly, the purpose of the notice requirement is to enable the non-moving party to consider the moving party's request for an alternative valuation date, investigate the value of the community assets as of the possible valuation dates, and, if necessary, oppose the request for an alternative valuation date. But here, Darlene was in default and the matter was set for a default prove-up hearing. As a party in default, Darlene had no right to participate in the default prove-up hearing, let alone contest Jose's proposed valuation date. (See *Sass v. Cohen* (2020) 10 Cal.5th 861, 882 ["a defendant who defaults is 'out of court' and not entitled to participate in the prove-up hearing"]; *In re Marriage of Askmo* (2000) 85 Cal.App.4th 1032, 1037 [default "precludes the respondent spouse from contesting the judgment or obtaining any effective relief until the default is set aside"].) Because Darlene had no right to participate in the default prove-up hearing, we cannot conceive how the claimed defect in notice could have harmed her.

Darlene also has not established that she was prejudiced by the family court's use of 2018 as the valuation date for the community estate. She

states the community estate "increase[d] in value" after 2018. However, she does not cite anything in the appellate record to corroborate this unsupported claim. Indeed, we are aware of no information in the record about the value of the community estate after 2018, except the family court's passing comment that it was "not sure what these properties are worth now." In the absence of any evidence showing that the community estate increased in value after 2018, we cannot simply assume that Darlene was prejudiced by the family court's selection of 2018 as the valuation date.

Even if we were to assume there has been an increase in the community estate's value since 2018, Darlene has not demonstrated that the family court abused its discretion when it valued the estate as of that time. As noted, Darlene's sole claim is that "inflation or market fluctuation," rather than Jose's one-sided efforts, caused the alleged increase in value. But Darlene does not provide any citation to the record to substantiate her argument. " '[I]f a party fails to support an argument with the necessary citations to the record, ... the argument [will be] deemed to have been waived' " (*Nwosu v. Uba* (2004) 122 Cal.App.4th 1229, 1246; *LNSU #1, LLC v. Alta Del Mar Coastal Collection Community Assn.* (2023) 94 Cal.App.5th 1050, 1070 ["where, as here, the appellants' opening brief makes contentions unsupported by proper record citations or cogent legal arguments, we may treat the contentions as forfeited"].) Because Darlene does not support her argument with proper citations to the record, the argument is waived.

11

IV

DISPOSITION

The judgment is affirmed.  Respondent is entitled to his costs on appeal.

McCONNELL, P. J.

WE CONCUR:

HUFFMAN, J.

CASTILLO, J.